## REMINGTON V. HIGGINS.

1. No special enactment of the territorial legislature, though valid when passed, but in conflict with and obnoxious to a constitutional provision relating to the same subject, survived the adoption of the constitution of this state.

2. A special act of the territorial legislature of 1885, authorizing the removal, by a majority vote, of a county seat previously located by the vote, of two-thirds of all the qualified electors of the county, *held* to be superseded by, because repugnant to, section 3 of the ninth article of the constitution.

3. In the absence of a jurisdictional question, the validity of an election by which a county seat was located can only be tested in a direct proceeding. Allegged irregularities cannot be considered and determined collaterally.

(Syllabus by the Court.   Opinion filed Sept. 1, 1894.)

Appeal from circuit court, Hamlin county. HON. A. W. CAMPBELL, Judge.

Complaint by Edward R. Remington against the board of county commissioners of Hamlin county, S. D., to contest a county seat election, whereby Castlewood, in such county was declared to be the county seat of such county. Such board failing to defend, Parley E. Higgins, a resident householder and qualified elector, was, by the court, given leave to defend. From a judgment for defendant, complainant appeals. Affirmed.

The facts are stated in the opinion.

*A. B. Melville*, for appellant.

A defendant cannot amend his answer so as to change an admission therein of a part of the complaint to a denial thereof. Paige v. Willett, 38 N. Y. 28; Robbins v. Codman, 4 E. D. Smith 325; Fleshman v. Stearn, 90 N. Y. 11; Spanagel v. Raey, 47 Cal. 608; Ford v. Ford, 35 How. Pr. 324.

*J. P. Cheever* and *Hall & Jenkins*, for respondent.

The only method by which the result of an election can be attacked is by contest proceedings or by a proceeding in the

nature of a *quo warranto.*   Brewer v. Railroad. 113 Mass. 52; Cicero v. Williamson, 91 Ind. 541; Argo v. Boothend, 30 Ind. 63; Blanchard v. Bissell, 11 O. St. 96; 4 A. & E. Ency. L, 376; McCreary Elec. 219; Robinson v. Moore, 25 Ill. 118; Hipp v. Charterwix, 29 N. W. 77; Hadley v. City, 33 N. W. 606.   If a proceeding under a power given by statute is in progress the repeal of the statute destroys the proceeding.   Sutherland Stat. Const. 165; The Schooner Rachael v. U. S. 6 Cranch 329; Yeoton v. U. S., 5 Cranch, 281.

Amendments shall be liberally allowed in furtherance of justice.   Van Sant's Pl. 809; McWilliam v. Dang, 18 Cal. 329; Rolland v. Kreyenhagan, Id. 455; Pierson v. McCahill, 22 Ind. 127; Stringer v. Davis, 30 Id. 321; Vanderbilt v. Access, 9 How. Pr. 352.   The allowance of amendments at the trial is in the discretion of the court and that discretion will be reviewed only in a clear case of its abuse.   Thornton v. Borland, 12 Cal 438; Fitzgerald v. Neustadt, 27 Pac. 936; Sichtmeeyer v. Remsen, 38 N. Y. 206; Meyer v. Fiegel, 7 Rob. 122; Hendricks v. Decker, 35 Barb. 398.

FULLER, J.   Upon a petition to remove the county seat from Castlewood to Bryant, signed by a majority of the legal voters of Hamlin county, and duly presented to the county commissioners of that county at the regular July, 1890, meeting, the question was submitted to the electors of said Hamlin county at a general election held November 4, 1890; and, notwithstanding it was legally ascertained that a majority of all the votes cast were for the removal of said county seat from Castlewood to Bryant, the county canvassing board declared in favor of Castlewood, because the proposition was not ratified by two-thirds of all the votes cast thereon.   This proceeding, authorized by section 1494 of the Compiled Laws, was duly instituted by a qualified elector, and prosecuted in the circuit court, for the purpose of testing the validity of said election, and to question the right of the village of Castlewood to be se-

lected and declared to be the county seat of said county. There was a trial to the court without a jury. From a judgment declaring the village of Castlewood to be the county seat of Hamlin county, and from an order overruling a motion for a new trial, contestant appeals.

The only important question of fact raised by the pleadings is whether the county seat of Hamlin county had been located at Castlewood, by a majority vote of the qualified electors of said Hamlin county, prior to the year 1890. As matters of fact the court found, in effect, that the county seat of Hamlin county was located at the Spaulding-Boswell ranch by the county commissioners at their first meeting after the organization of the county, in the year 1878, and at the next general election held in said county, on the 1st day of November of that year, the question of the location of said county seat was regularly submitted; and the Spaulding-Boswell ranch, receiving a majority of all the votes cast upon the question, was duly declared to be the county seat, and so remained until November 13, 1884. The findings of the court relating to a resubmission of the question in 1884 are as follows: "(6) That at an adjourned meeting of the board of county commissioners of said county, held on September 1st, in the year 1884, two-thirds of the legal voters of said county signed, and presented to the board of county commissioners, a petition in due form praying that the question of the change and location of the county seat of said county be, in due and legal form, submitted to the electors of said county at the general election to be held therein in the year 1884. (7) That by virtue of said petition said commissioners did, in due time and legal form, submit said question of the change and location of the county seat of said county to the electors thereof at the general election held therein on the fourth day of November, 1884, and that at said election the question of the change and location of the county seat of said Hamlin county, having been duly submitted, was duly and legally voted upon by the legal voters of said county. (8) That at said general election the

town of Castlewood, on section 35, township 115, range 52, in said county of Hamlin, received more than two-thirds of all the legal votes cast by the electors or said county at said election, and thus became the county seat of Hamlin county. (9) That thereafter, on the 13th day of November, 1884, the canvassing board of said Hamlin county canvassed the vote of said election, and found that said town of Castlewood received more than two-thirds of all the votes cast at said election, and declared the town of Castlewood to be the county seat of Hamlin county. (10) That on the said 13th day of November, 1884, the county commissioners of said county removed all of the records, books, papers and other property belonging to said county to said town of Castlewood, where they have since been kept, and where all of the county business ever since then has been transacted, and that said town of Castlewood ever since has been, and now is the county seat of said Hamlin county." As a matter of law based upon the foregoing findings of fact, the court concluded, in effect, that said village of Bryant, having failed to receive two-thirds of all the votes cast at the November 1890, election, did not become the county seat of said Hamlin county, and it was ordered and adjudged that said county seat be and remain at the village of Castlewood until legally removed. For a reversal of this case, counsel for appellant relies upon section 5 of a special act of the territorial legislature of 1885, which act, as amended at the same session, is as follows: "The act of the county commissioners of said Hamlin county in [locating] and declaring the county seat of said Hamlin county, to be at Castlewood in said county, is hereby declared and made valid, and the county seat of said county shall be and remain at said town of Castlewood, and the county officers of said county shall keep their offices and all the county records, books, papers, insignia and other property of the said county at said town of Castlewood. * * * Provided that the location of the said county seat may be changed in the manner now or that may hereafter be prescribed by law, except that at the

first submission of said question, a majority of all the votes cast shall determine such location, and provided further, the question at such first submission shall be submitted by the county commissioners to the people at a general election or annual election whenever a majority of all the voters of the county petition for such submission, and the whole number of votes cast at the next preceding general election shall be taken as a basis of calculation to determine whether a majority have petitioned."

All steps and proceedings to change the location of the county seat from Castlewood to Bryant were taken and had subsequently to the organization and admission of the state of South Dakota into the Union under our constitution, which by adoption, became the supreme law of the state. Sections 2 and 3 of article 9 of the constitution are as follows:

(2) "In counties already organized where the county seat has not been located by a majority vote, it shall be the duty of the county board to submit the location of the county seat to the electors of said county at a general election. The place receiving a majority of all the votes cast at said election shall be the county seat of said county."

(3) "Whenever a majority of the legal voters of any organized county shall petition the county board to change the location of the county seat which has once been located by a majority vote, specifying the place to which it is to be changed, said county board shall submit the same to the people of said county at the next general election, and if the proposition to change the county seat be ratified by two-thirds of the vote cast at said election, then the county seat shall be changed, otherwise not."

Should it be found that the county seat of Hamlin county was located at Castlewood by the vote of 1884, and not by the special legislative act of 1885, the action of the trial court must be sustained, because that portion of the special act upon which appellant relies, and seeks to change the location of the

county seat from Castlewood to Bryant by virtue of the majority vote of 1890, is obnoxious to the constitutional provision of section 3 of article 9, and did not survive the adoption thereof. Cutting v. Taylor (S. D.), 51 N. W. 949. Upon the trial appellant introduced evidence sufficient to sustain every material fact found by the court, and while it appears that there were in 1884 certain slight irregularities on the part of some of the election officers, in returning and canvassing the vote, no jurisdictional question involving the validity of the election is presented; and the action of such officers is therefore not at this time, and in this proceeding, open to inquiry and collateral attack. Brewer v. Railway Co., 113 Mass. 52; Town of Cicero v. Williamson, 91 Ind. 541; Blanchard v. Bissell, 11 Ohio St. 96; Robinson v. Moore, 25 Ill. 135. All steps preliminary to a submission of the question to a vote at the 1890 election indicate an intention to proceed under section 3 of article 9 of the constitution, and the county commissioners were petitioned to submit to the vote of the people the question of changing the location of the county seat from Castlewood to Bryant, instead of locating the same in the first instance by a majority vote, in accordance with the provisions of section 2 of that article, relating to counties in which the county seat had never been located by a majority vote; and there is nothing in the special act of 1885 warranting a conclusion that the legislature attempted to do more than to ratify the proceedings of the election officers, and by so doing the action of the electors in locating the county seat at Castlewood in 1884 was doubtless recognized and considered. To hold in this proceeding that the county seat was located at Castlewood by the act of the legislature, and not by the vote of the people, would be to assume, in this collateral proceeding, that such unchallenged election was nugatory and void; for, if not so, the effect of said election was, until set aside, to locate the county seat, and the design of the legislative action was to cure probable irregularities, but not to validate and make effective a void election. Upon the vote of two-

thirds of all the qualified electors, the county seat was removed
from the Spaulding-Boswell ranche to Castlewood, and the va-
lidity of said election was not questioned by contest or other-
wise, and said village still remains the county seat of said coun-
ty. The proposition to remove the same to the village of Bry-
ant, submitted to the electors of said county in 1890, failed to
be ratified by two thirds of all the votes cast at said election,
and as no error is presented by the record the judgment of the
trial court is affirmed.