### Cutting, City Treasurer, v. Taylor, State Auditor.

1. Whether or not any particular territorial law, or any independent provision, survived the adoption of the state constitution, and so continues in force as the law of the state, depends upon whether or not such law or such provision is obnoxious to any rule or provision of the constitution.

2. As from the property of the state is largely derived the revenue of the state, it is within the legitimate powers of a state government to employ general means for the protection of the property, as well as the persons, of its citizens.

3. To accomplish such protection, and as a means of securing greater efficiency in the fire departments and service of the state, the legislature may lawfully offer, by general law, a compensation or reward to such fire companies as will comply with conditions therein named, designed to promote their usefulness and competency; and acceptance and compliance with such conditions constitute a sufficient consideration for an appropriation by the legislature to redeem such promise.

4. Such appropriation is not a "donation," within the meaning of section 1, art. 13, of the constitution.

5. Neither constitutions nor statutes should be so construed as to give them retroactive effect, unless such intention is clearly expressed.

6. A law, valid when passed, and regularly enacted, as then required, is not necessarily abrogated or repealed by a subsequent constitutional provision requiring the pursuance of other or different forms of legislation than those which were adequate when such law was passed.

7. The provisions of the state constitution prescribing the form and method of passing appropriation bills, refer only to future legislation, or legislation under the constitution.

8. Chapter 53, Laws 1887, constituted a lawful appropriation, as the law then was, of the amount and for the purpose therein named, and, the constitutional provisions having no retroactive force, it continues an efficient appropriation until repealed by the legislature.

(Syllabus by the Court. Opinion filed April 5, 1892.)

Original application by Eugene Cutting, as city treasurer of Pierre, Hughes county, for a writ of *mandamus* to compel Louis C. Taylor, as state auditor, to issue certain warrants. Writ granted.

The facts are fully stated in the opinion. No briefs filed.

*Crawford & Deland*, for plaintiff.

*Robert Dollard, Attorney General*, for defendant.

KELLAM, P. J. This is an application to this court for a writ of *mandamus* requiring defendant, as state auditor, to issue a warrant upon the state treasury to the petitioner, as treasurer of the city of Pierre. The statutes upon which the right to such warrant is claimed are as follows: By chapter 69, Laws 1885, the legislature of the territory of Dakota, in a general law, revising and amending the laws for the organization and control of insurance companies, provided by section 40 of said law that certain insurance companies should be required to pay into the state treasury, as taxes, 2 1-2 per cent. of the gross amount of premiums received in the territory during the preceding year. By chapter 53, Laws 1887, the said legislature further provided that the clerk of every city, town, or village in the territory having an organized fire department should annually make and file with the territorial auditor his certificate, giving certain information, in section 1, of the law, more particularly defined, as to organization, strength, and equipment of such company or companies, together with such other facts as the auditor might require. By section 2 of the law it was provided that the blanks furnished by the auditor to insurance companies for their annual reports should also contain the names of the cities, towns, and villages entitled to benefits under such act, and that every insurance company doing business in the territory should include in its annual statement the amount of all premiums received by it upon policies issued on property within the corporate limits of such city, town, or village during the year. Section 3 required the auditor on the 1st day of July thereafter to issue and deliver to the treasurer of each city, town, or village having an organized fire department entitled to the benefits of this act his warrant upon the treasurer for an amount equal to 2 per cent. of the premiums received upon policies issued on property in such city, town, or village, and further providing for the disposi-

tion and distribution of the money when collected on such warrant. Section 4 defined the qualifications and conditions of a fire department to entitle the city, town, or village within which it was located to the benefits of the law. Chapter 105, Laws of 1890, declared all territorial laws in force at the date of the state's admission, and not repugnant to or inconsistent with the constitution, to continue in force until altered, amended, or repealed. The petition alleges a full compliance with all the conditions and requirements of said chapter 53; that, as shown by said statements and reports returned to and filed with said auditor, there is now in the state treasury the sum of $205.82, to which the said city of Pierre is entitled, and for which the said auditor should draw and deliver to petitioner, as treasurer of said city, a warrant; but that said auditor refuses so to do. The issue is presented by demurrer to the petition, so that the facts are admitted.

Subsequently to the passage of the foregoing acts by the territorial legislature, and while the same were in force, the state of South Dakota was organized, with a constitution adopted by the people, which then became, and thereafter was to be, the supreme and controlling law of the state. The laws of the territory of Dakota continued in force as the laws of the new state so far as they were not repugnant to such constitution, but whenever and to the extent that they were so repugnant they ceased to be law, and were superseded by the constitution. Insurance Co. v. Canter, 1 Pet. 541; Benner v. Porter, 9 How. 235; State v. Ah Jim, (Mont.) 23 Pac. Rep. 76. So that whether any particular territorial law or any independent provision survived the adoption of the state constitution, and so continues in force as the law of the state, depends upon whether or not such law or such provision is obnoxious to any rule, prohibition, or provision of the constitution. Against the allowance and payment of this claim it is suggested that the purpose of the law (said chapter 53) is to appropriate the money of the state to various fire companies, not in discharge of a legal liability of the state, but in recognition of a moral obligation only, and is therefore inconsistent with section 1, art. 13, of the constitution, which is as follows: "Neither the state, nor any county, township, or municipality shall loan or give its credit or make

donations to or in aid of any individual, association, or corpora-
tion, except for the necessary support of the poor; nor subscribe
to nor become the owner of the capital stock of any association or
corporation; nor pay or become responsible for the debt or liability
of any individual, association, or corporation." This language is
plain and comprehensive. By it the legislature is forbidden to
make donations, either to individuals, associations, or corporations,
whether moved by considerations of charity or gratitude, or on ac-
count of some supposed moral obligation resting upon the people
of the state. The object of the prohibition is equally plain. With-
out it or other equivalent restriction the legislature would have
unlimited power to respond with direct appropriations of public
money to any and every call, controlled only by the judgment and
honesty of its individual members. The prohibition was designed
not only to protect the treasury from such appropriations, but to
protect legislators and the general legislation of the state from
the always embarrassing, and often corrupting, influences which
have sometimes been suspected as persuasive factors in the ac-
complishment of legislation of advantage to particular persons, in-
terests, or localities. At first we were strongly inclined to regard
this appropriation as in violation of the constitutional provision
quoted, but, after further reflection, we are disposed to consider it
as an open proposition on the part of the state to the various fire
companies, which, when accepted and acted upon, as in this case,
has at least sufficient of the elements of a contract to justify its
recognition by the state, and an appropriation to redeem its prom-
ise. From the property in the state is largely derived the revenue
of the state, and it is doubtless within the legitimate powers of
a state government to employ general means for the protection of
the property, as well as the persons, of its citizens; and so it au-
thorizes its cities and towns to purchase, and pay for out of public
funds, engines and carts and ladders, and to construct and keep
in repair buildings for their keeping and preservation, as a means
of protecting the property of its citizens against destruction by
fire. But it has been often demonstrated that the best and most
perfect of these appliances are of little use without educated and
disciplined men to handle them. As a means of securing greater
efficiency in this important service of the state, in the preserva-

tion of the property of its citizens, the legislature has advertised by a general law that such fire companies as would comply with certain conditions in the matter of organization, equipment, etc., fully set out in the law, and which certainly tend to promote the efficiency of the service, and to secure the object sought, would be entitled to receive the payment or reward provided in the law under consideration. We think the offer on the part of the legislature was within its lawful powers, and, if so, its acceptance and compliance with its terms constituted the earning of the reward or compensation. It is not a donation to the companies upon considerations of gratitude or moral obligations; if we so regarded it, we should hesitate to sustain it; but it is an unqualified offer by the state to the fire companies that, if they will do certain things, which the state regards as advantageous to it to have done, it will appropriate to each company so complying 2 per cent. of the premiums received upon insurance policies issued on property in the town or city where such company is located. This case is different in principle and must be distinguished from that class of cases of which Bourn v. Hart, (Cal.) 28 Pac. Rep. 951, is an extreme one. Bourn, the petitioner, had lost an arm while in the service of the state as a guard at the state-prison, and the legislature had made an appropriation to him of $10,000 on that account. The court says: "The appropriation by this act is a mere gratuity, as the state was under no legal liability to compensate him for any loss which he may have sustained while thus in the discharge of his duties." There the only consideration for the appropriation was the possible moral obligation growing out of the fact that the petitioner was injured while in the service of the state. The state had discharged its entire legal obligation to him by paying him all it had agreed to for his services. The court clearly recognizes the distinction between that case and this in the closing paragraph of the opinion, when it says: "If the state desires to make itself liable for such damage as may be sustained by those in its service, it must do so by a general law, which shall embrace all cases which may come within its provisions." And this is what the law we are considering does. Recognizing and appreciating the advantage of an efficient and disciplined fire service, it publishes in a general law the conditions which it considers

promotive of such efficiency, and then offers a definite reward or compensation to such companies as comply with such conditions.

In our opinion, the acceptance of and compliance with the conditions of this offer constitute a valid consideration for this appropriation, and that it is not a "donation," within the meaning of the constitutional prohibition. It is an appropriation to a proper governmental and public purpose, and is received by the fire companies, not as a donation or gift, but as fairly and fully earned and justly paid. The appropriation is not made from motives of charity, but as a matter of business policy, and for which the fire companies render an equivalent, which the state, as it has power to do, has undertaken in advance to accept as a full consideration therefor. The offer of the state may at any time be withdrawn by a repeal of the law, but so long as it remains open the fire companies complying with its terms are entitled to its reward. In Trustees v. Roome, 93 N. Y. 313, the court of appeals went much further in upholding a law in many respects like this than we are required to go in this case. Their constitutional prohibition was similar to ours, and the law whose validity was challenged required the agents of insurance companies not incorporated in the state to pay annually to the treasurer of the Exempt Firemen's Benevolent Fund of the city of New York a percentage upon the gross premiums received by them for insurance upon property in that city. The appropriation thus made was not to, nor for the use of, the active firemen of the city, nor directly to promote the efficiency of the service, but was largely for social and benevolent purposes; and yet the court held that the appropriation was not a donation, but "an appropriation of public money to a public use."

It is further argued that section 3 of said chapter 53—being section 1139, Comp. Laws—is not a sufficient appropriation to meet the requirements of our constitution. It is a general rule that neither constitution nor statutes should be so construed as to have retroactive effect, unless such intention is clearly expressed. Cooley, Const. Lim. pp. 62, 63; Suth. St. Const. §§ 463, 464; People v. Gardner, 59 Barb. 198; Allbyer v. State, 10 Ohio St. 588; *Ex. parte* Burke, 59 Cal. 6. All legislation, under the constitution, must be tested by its provisions, but a law valid when passed, and regularly enacted as then required, is not necessarily abrogated

or repealed by a subsequent constitutional provision requiring the pursuance of other and different methods or forms of legislation than those which were adequate when such law was passed, for that would be to make such constitutional requirement retroactive; and so it must be held that the provisions of our state constitution prescribing the form and method of passage by the legislature of appropriation bills refer only to future legislation, or legislation under such constitution. From the time of the adoption of the constitution the legislature could make appropriations of public money only in the manner therein prescribed, but the adoption of the constitution did not have the effect to repeal or abrogate appropriation laws theretofore regularly passed. State v. Kenney, (Mont.) 29 Pac. Rep. 89; Cass v. Dillon, 2 Ohio St. 607; State v. Barber, 3 Ind. 258; State v. Macon County Court, 41 Mo. 453; State v. Thompson, 2 Kan. 432; *Ex parte* Burke, *supra.* With the legislature rests the right and the duty to provide for disbursing the public funds. "No money shall be paid out of the treasury except upon appropriation by law, and on warrants drawn by the proper officer." Const. art. 12, § 1. We apprehend that an appropriation law is to be construed under and by the same rules as other legislation. The primary object in the construction of any statute is to discern the object of the legislature in making it. When, therefore, the territorial legislature directed, as in section 3 of said act, that "the auditor * * * shall issue and deliver to the treasurer in each city, town," etc., "his warrant upon the territorial treasurer for an amount equal to 2 per cent. of the premiums received upon policies issued upon property in any such city, town," etc., "and such warrants shall be paid by the territorial treasurer * * * upon presentation thereof," there can be no doubt that such legislation was intended to and did constitute a valid appropriation under the law as it then was. No effect can possibly be given to said section 3 unless it be construed as an appropriation. It has no other purpose or place in the law. The amounts appropriated in each case are definite and certain. Nothing is left to the judgment or will of any other board or officer. There is no attempted delegation of legislative power. We think it was a good appropriation when made. Ristine v. State, 20 Ind. 338; Carr

v. State, (Ind. Sup.) 26 N. E. Rep. 778. Being good when made, and the constitutional prohibition having no retroactive force, it continues a good appropriation until repealed by the legislature. Let the writ issue as prayed for.

All the judges concur.