STATE *ex rel.* FARRAR, City Treasurer, *v.* HIPPLE, State Auditor, and STATE *ex rel.* LARSON, City Treasurer, *v.* SAME.

1. Chapter 53, Laws 1887, contains an open offer, and creates a liability upon the part of the state to such organized fire companies as may comply with the terms and conditions of such offer, and, unless qualified by subsequent legislation, constitutes a valid appropriation of the moneys to meet such liability. Cutting v. Taylor, 51 N. W. 949, 3 S. D. 11, followed.

2. Chapter 97, Laws 1895, which forbids the state auditor to draw any warrant upon the state treasurer "without an appropriation in exact amount for the specific purpose having first been made," does not repeal nor invalidate the appropriation made by said chapter 53, Laws 1887, for the amount for which such warrant is to be drawn is exact in amount, it being in each case specifically and precisely 2 per cent. of another certain and definite sum appearing upon the official books of the auditor.

(Syllabus by the Court.    Opinion filed July 13, 1895.)

Separate original actions for mandamus. The two cases were consolidated for trial. Judgment for plaintiffs.

The facts are stated in the opinion.

*Smith & Brown,* for relator Farrar; *Aikens & Brown,* for relator Larson.

*Coe I. Crawford,* Attorney General, and *E. F. Swartz,* for defendant.

KELLAM, J. These were original applications to this court for writs of mandamus requiring defendant, as state auditor, to issue warrants in favor of the relator plaintiffs, respectivily, as city treasurer of their several cities as above named, for the amounts to which such treasurers claim to be entitled for the use of the fire departments of said cities under the provisions of chapter 53, Laws 1887. The cases being alike, they will be disposed of in one opinion.

Whithout prefatory detail it is sufficient to say that in Cutting v. Taylor, 3 S. D. 11, 51 N. W. 949, the legal effect of this law was determined, and it was there held that the same constituted a

lawful appropriation, which remained unrepealed by force of any provision of the subsequently adopted constitution or by any law of the legislature then existing. It is agreed that that case must rule this unless, as is claimed by defendant, the authority and duty of the auditor to draw such warrant are adversely controlled by chapter 97 of the Laws of 1895. Section 1, being the pertinent section of this chapter, is the same as section 1, c. 111, of the Laws of 1891, in full force when the Cutting case was decided, except in one particular. The law of 1895, as far as applicable to this question, is that "any state auditor or member of any auditing board, who shall draw any voucher or warrant without an appropriation in exact amount for the specific purpose first having been made by the legislature," etc., shall be deemed guilty of a misdemeanor. The Laws of 1891 did not contain the words "in exact amount" following the word "appropriation." Much importance is attached by the auditor to these words, as indicating an intention on the part of the legislature to forbid the issue of warrants until the exact and specific sum for which the same was to issue should first be passed upon and named by the legislature, and that, impressed with that purpose and intent, its legal effect was to impliedly repeal said chapter 53, Laws 1887, or at least to arrest payments under it. It would be supereogatory to cite authorities to the effect that repeals by implication are not favored, but even if the courts had not so often and so persistently declared themselves upon this subject, we should feel reasonably certain that by the insertion of the words "in exact amount" in the old law of 1891, the legislature did not intend or understand that it was wiping out of the statutes a provision which had for years stood as a part of the public economic policy of the state. It must be presumed that the legislature knew, when it added these words to the law of 1891, that the courts had sustained the validity of said chapter 53 of the Laws of 1887, not only as a quasi contract between the state and those who accepted and conformed to its terms, but also as a valid appropriation of the money to make payments under it. If the legislature had decided to discontine its standing offer to the or-

ganized fire companies of the state, which it knew was subject, as the law then stood, to be accepted and enforced by such as should conform to its terms and conditions, and withdraw the state from the relation of a contracting party with them, it would certainly have gone at it in a more direct and business-like way.

The most that could reasonably be claimed for this amendment of 1895 would be that it was intended to prohibit the auditor from drawing a warrant where the amount for which it was to be drawn was not specifically fixed by legislative authority; and even that view, as rigidly and literally enforced in the case of other appropriations as we are asked to do it here, would, it seems to us, involve the auditor in embarrassment and doubt not contemplated by the legislature itself. The very legislature that passed this amendment did not hesitate to appropriate "such sums as are necessary, not exceeding" an amount named, and certainly it appropriated, as is usually done, stated amounts, "or so much thereof as shall be necessary," leaving to other and sometimes subordinate officers and agencies the duty and responsibility of fixing the exact amount to be paid. In the case now before us the exact amount for which the warrant is to be issued in each case is fixed by mathematical calculation. There can be no uncertainty about it. Section 2 of said chapter 53 of the Laws of 1887 requires every insurance company doing business in the state to include in its annual statement to the auditor the amount of all premiums received by it upon policies issued on property within the corporate limits of each city, town, or village of the state during the year. By a prior law (chapter 69, Laws 1885) each insurance company was required to pay into the state treasury, as taxes $2\frac{1}{2}$ per cent. of the gross amount of premiums received in the state during the preceding year. Section 3 of chapter 53 of the Laws of 1887 required the auditor, on the 1st day of July of each year, to issue and deliver to the treasurer of each city, town, or vil'age having an organized fire department, and complying with the conditions of said chapter 53, a warrant upon the state treasurer for the amount equal to 2 per cent. of the premiums received upon

policies issued on property in such city, town, or village. It will thus be seen that in no case can there be any uncertainty as to the amount for which the warrant should be drawn. If the legislature were to pass an appropriation act for each individual case, it would be obliged to obtain the amount from the auditor, and it could be neither more nor less than the exact amount as shown by the books of the auditor's office. The said chapter 53 constituting, as we held it did in the Cutting Case, a valid appropriation law, the law of 1895 does not affect it as such, for the appropriation which it makes is "exact in amount." There is nothing in such latter law which modifies our views of the duty of the auditor in the premises as expressed in Cutting v. Taylor. While such is our conclusion as to the law of this case, we think the auditor acted prudently in declining to draw these warrants until the question as to his legal right and duty so to do was judicially determined. Let the writ issue as prayed.