2004 SD 70

**In re Dorothy DAVIS, Bankruptcy Debtor.**

**No. 22935.**

Supreme Court of South Dakota.

Argued Feb. 18, 2004.

Decided May 26, 2004.

453

Lawrence E. Long, Attorney General, David D. Wiest, Assistant Attorney General, Pierre, South Dakota, Attorneys for Intervenor.

James A. Craig, Sioux Falls, South Dakota, Attorney for Bankruptcy Debtor Dorothy Davis.

John S. Lovald of Olinger, Lovald, McCahren and Reimers, Pierre, South Dakota, Chapter 7 Bankruptcy Trustee.

KONENKAMP, Justice.

[¶ 1.] The United States District Court for the District of South Dakota, the Honorable Lawrence L. Piersol, Chief Judge, certified two questions for this Court: (1)

Whether the last sentence of SDCL 43–45–3(2) violates Article VI § 18 of the South Dakota Constitution. (2) Whether the last sentence of SDCL 43–45–3(2) violates Article XXI § 4 of the South Dakota Constitution. On the first question, we rule in the negative, but on the second question, we hold that because the last sentence of SDCL 43–45–3(2) fails to set a limit on the amount of a homestead exemption that may be claimed by persons seventy or older, it violates Article XXI § 4 of our Constitution.

### Background

[¶ 2.] The debtor, Dorothy Davis, filed a Petition for Relief under Chapter 7 of the United States Bankruptcy Code. At the time, she was seventy-five years of age. Because she was over seventy, she sought a homestead exemption for the entire equity of her home. The value of the claimed exemption surpassed $30,000.

[¶ 3.] The bankruptcy trustee objected to this unlimited exemption on the ground that it violates the South Dakota Constitution. Specifically, the trustee questioned whether the last sentence of SDCL 43–45–3(2) violates either Article VI § 18 or Article XXI § 4 of the South Dakota Constitution. Because resolving these issues would have required a federal court to determine whether a South Dakota statute violated the South Dakota Constitution, the questions were certified to this Court for consideration.

### Analysis and Decision

[¶ 4.] Homestead exemptions protect the security of the home and family against the claims of creditors. *Speck v. Anderson,* 318 N.W.2d 339, 343 (S.D.1982). This Court has always jealously guarded these exemptions guaranteed in both our Constitution and statutes. *Id.* Our primary duty is to our Constitution. Laws violating the Constitution cannot stand. We presume that statutes are constitution-al unless shown otherwise beyond a reasonable doubt. *Accounts Management, Inc. v. Williams,* 484 N.W.2d 297, 299 (S.D.1992). If possible, we interpret statutes reasonably to find them constitutional and valid. *State v. Krahwinkel,* 2002 SD 160, ¶ 43, 656 N.W.2d 451, 466. The party asserting the unconstitutionality of a statute bears the burden of persuasion. *Id.*

### I.

[¶ 5.] Question 1: Whether the last sentence of SDCL 43–45–3(2) violates Article VI § 18 of the South Dakota Constitution. The trustee argues that SDCL 43–45–3(2) violates Article VI § 18 of the South Dakota Constitution by creating two classes of debtors. Article VI § 18 provides:

No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations.

"[W]hen a statute has been called into question because of an alleged denial of equal protection of the laws," we employ our traditional two-part test. *Accounts Management,* 484 N.W.2d at 299–300. First, we determine whether the statute creates arbitrary classifications among citizens. *City of Aberdeen v. Meidinger,* 89 S.D. 412, 233 N.W.2d 331, 333 (1975). Second, if the classification does not involve a fundamental right or suspect group, we determine whether a rational relationship exists between a legitimate legislative purpose and the classifications created. *Accounts Management,* 484 N.W.2d at 300.

[¶ 6.] Homestead laws are designed to protect societal and familial interests centered on a secure home, by restricting the circumstances where a home may be taken for payment of debts. *Gross v. Gross,* 491 N.W.2d 751, 753 (S.D.

1992); *Kingman v. O'Callaghan,* 4 S.D. 628, 637–38, 57 N.W. 912, 915 (1894). The final sentence in SDCL 43–45–3(2) grants an unlimited homestead exemption to those over the age of seventy. Effectively, then, the statute creates two distinct classes of debtors: those who have attained the age of seventy and those who have not.

■ [¶ 7.] Nonetheless, we cannot say that the Legislature's creation of the separate classes was arbitrary. We consider such classifications arbitrary only if they were made "[w]ithout adequate determining principle." *Accounts Management,* 484 N.W.2d at 300. As pointed out by Amicus Curiae, AARP, approximately 73,-000 of South Dakota's citizens who are seventy years of age or older live outside of an institutionalized setting. Of these, nearly half have some disability. In addition, the income of elderly South Dakotans is significantly less than that of the general population. We believe that such obvious discrepancies between elderly South Dakotans and all others provide an adequate "determining principle" upon which the Legislature may have deemed it appropriate to create the separate classifications. Therefore, SDCL 43–35–3(2) meets the first part of our test.

■ [¶ 8.] Under the second part, the State need only show that a rational relationship exists between the creation of the classifications and some legitimate state interest. *Accounts Management,* 484 N.W.2d at 300. Numerous courts have found that age classification promotes legitimate and rational state interests. *See, e.g., Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972) (higher welfare benefits); *Acevedo v. Nassau County,* 500 F.2d 1078 (2d Cir.1974) (low income housing); *Action Alliance for Senior Citizens of Greater Philadelphia v. Shapp,* 400 F.Supp. 1208

(E.D.Pa.1975)(property tax relief); *Ex parte Melof,* 735 So.2d 1172 (Ala.1999) (tax exemption for state retirees); *Kahn v. Thompson,* 185 Ariz. 408, 916 P.2d 1124, 1128 (1995) (discounts at local businesses); *Doran v. Cullerton,* 51 Ill.2d 553, 283 N.E.2d 865 (1972) (homestead exemption for persons 65 and older); *State ex rel. Harvey v. Morgan,* 30 Wis.2d 1, 139 N.W.2d 585 (Wis. 1966) (tax relief). In accord with the same principles, we believe public policies assisting older South Dakotans to stay in their homes as they age is rationally related to a legitimate state interest.

[¶ 9.] The trustee cites as controlling our earlier decision in *O'Leary v. Croghan,* 42 S.D. 210, 173 N.W. 844 (1919). In *O'Leary,* this Court held that the Legislature's attempt to create separate classes of debtors was not authorized by Article XXI § 4 of the Constitution and was "expressly prohibited by the provisions of [Article VI § 18]." 173 N.W. at 845. The Court reasoned that "[t]he discriminations that have been attempted by the Legislature may be wise and in the interest of the public at large, but until the Constitution has been changed the Legislature is without authority to make them." *Id.* While the Constitution has not changed, our test for deciding when a statute violates the "Privileges and Immunities Clause" has. *See City of Aberdeen,* 89 S.D. 412, 233 N.W.2d 331. A strict reading of that clause is limited to matters involving suspect classes or fundamental rights. *See Accounts Management,* 484 N.W.2d at 300. Therefore, insofar as our opinion in *O'Leary* contradicts our conclusion here, it is overruled.

## II.

■ [¶ 10.] Question 2: Whether the last sentence of SDCL 43–45–3(2) violates Article XXI § 4 of the South Dakota Constitution. Our constitutional provisions

do not confer power upon the Legislature, rather they impose limitations on legislative authority. *Breck v. Janklow*, 2001 SD 28, ¶ 9, 623 N.W.2d 449, 454. As such, in determining the constitutionality of statute, our first task is to ascertain the limitations on legislative authority set down by our Constitution.

[¶ 11.] Article XXI § 4 of the South Dakota Constitution declares:

> The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws exempting from forced sale a homestead, the value of which shall be limited and defined by law, to all heads of families, and a reasonable amount of personal property, the kind and value of which to be fixed by general laws.

[¶ 12.] We have not dealt directly with the question how the Constitution requires the Legislature to limit the value of a homestead exemption. However, this Court has determined that in regard to the personal property exemption, the Constitution mandates a monetary limit. In *Skinner v. Holt*, 9 S.D. 427, 69 N.W. 595, 597 (1896), this Court ruled that a legislative act, which provided that proceeds received by a debtor from a life insurance policy were exempt without limit from the payment of debts, violated Article XXI § 4 of the Constitution. Reasoning that an unlimited exemption "furnishe[d] no basis for computation or measure of value," the Court held that such an unlimited exemption was "clearly repugnant to ... the [C]onstitution of this [S]tate."[1] *Id.*

[¶ 13.] The debtor points to our discussion in *Hansen v. Hansen*, 40 S.D. 114, 166 N.W. 427 (1918), as standing for the proposition that the Legislature need not impose a monetary limit on the amount that may be exempted. This argument is unpersuasive. The issue presented in *Hansen* was whether, by statute, the Legislature had limited the value of a *homestead*, not whether our Constitution mandated that the value of a *homestead exemption* be limited. In concluding that our Constitution did not mandate a limit on the value of a homestead, the *Hansen* Court differentiated between a statute limiting and defining the value of a homestead with one limiting and defining the value of a homestead exemption.[2] *Id.* The Court reasoned:

> At first glance, this section appears to contain, or rather to recognize, a limitation on the value of the homestead. But such is not the case. [This section] does not purport to define or limit the homestead itself. It merely provides what

---

1. Judge Deighton Corson was a delegate to both the 1885 and 1889 Constitutional conventions. He joined in the 1896 *Skinner* decision. It seems unlikely that had the constitutional conventions intended that no limit be set by the Legislature that he would have concurred only seven years later in *Skinner*.

2. As noted by the Court, at issue in *Hansen* were the following provisions of the political code:

    Section 3223:
    It [the homestead] may contain one or more lots or tracts of land with the buildings thereon and other appurtenances, subject to the limitations contained in the next section....

    Section 3224:
    If within a town plat it must not exceed one acre in extent, and if not within a town plat it must not embrace in the aggregate more than 160 acres....

    [S]ection 3215:
    The homestead of every family resident in this state, as hereinafter defined, to the extent of $5,000 in value, whether such homestead be owned by the husband or wife, so long as it continues to possess the character of a homestead, shall be exempt from judicial sale, from judgment lien, and from all mesne or final process from any court.... *Hansen*, 166 N.W. at 428.

portion, in value, of the homestead that has been created and defined by some other provision of law shall be exempt from levy or sale on execution. The mere fact that the law provides that the homestead, to the extent of $5,000 in value, shall be exempt from levy or sale on execution, does not necessarily imply that the homestead can in no case exceed $5,000 in value[.]

*Id.* at 428. It is important to note that the Court's analysis focused on a statute, not on a constitutional provision. This holding merely recognized that the creation of a statute defining and limiting the amount of a homestead exemption in accord with constitutional mandate did not serve to redefine a homestead. Thus, the Court remarked that Article XXI § 4 is related only to homestead exemptions, not the creation, definition, or limitation of the homestead itself.

[¶ 14.] We also disagree with the debtor's assertion that "nothing in [the decision] suggests the Legislature [does not have] the power to set a dollar limit, or not, as it chooses, with respect to the homestead." An early member of this Court, Judge Samuel Polley, alluded to such a requirement when he wrote, "[T]he most that can be said for this provision of the Constitution is that it admonished the Legislature, in cases where the homestead, as it is defined and limited by [statute], exceeds a valuation *to be fixed by the Legislature,* to subject the portion thereof in excess of such valuation to the payment of the owner's debts." *Id.* Clearly, Judge Polley recognized that the provision imposed a requirement on the Legislature to set a limit on a claimed homestead exemption.

[¶ 15.] The debtor next argues that the Court, in *State v. Knudtson,* 65 S.D. 547, 276 N.W. 150 (1937), rejected the precise argument presented by the trustee. The debtor's reliance on that Court's opinion is misplaced. The decision in *Knudtson* rested on an entirely separate constitutional provision dealing with taxation. As the *Knudtson* Court made clear, a constitutional amendment was adopted "abrogat[ing] limitations contained in the Constitution upon the legislative power to exempt property from taxation." *Id.* at 153. The Court succinctly held, "It is hardly necessary to state that the limitation upon exemptions contained in the constitutional provisions relating to homesteads has no reference to taxation." *Id.* However, the opinion of the *Knudtson* Court does reveal that it too recognized that the Legislature was constitutionally bound to set a limit upon homestead exemptions. In explaining the *Hansen* opinion, the Court stated:

The opinion recognizes that the part exempt from the claims of creditors is not "the whole homestead" referred to in section 466; that section 2658 does not define or limit the homestead itself, but merely provides what portion and value of the homestead created and defined by other provisions of law shall be exempt from levy or sale on execution; and that *the constitutional mandate* does not require a limitation upon the value of the homestead itself.

*Id.* at 152 (emphasis added). What constitutional mandate was the Court referring too?—the mandate that the Legislature "provide[ ] what portion and value of the homestead . . . shall be exempt from levy or sale on execution[.]" *Id.*

[¶ 16.] The plain language of Article XXI § 4 and our early decisions point to the conclusion that the Legislature must limit that portion of a homestead which may be exempted from forced sale. However, both the State and the debtor argue that a homestead's exemption value is already limited and defined by law. This

argument is based on an interpretation that a monetary limitation is not required and, instead, that an area limitation suffices to limit the "value" of the exemption. Specifically, the debtor points to SDCL 43–31–1 through 43–31–4 as limiting the value of the homestead by limiting what may constitute a homestead. Those statutes provide:

SDCL 43–31–1:

The homestead of every family, resident in this state, as hereinafter defined, so long as it continues to possess the character of a homestead is exempt from judicial sale, from judgment lien, and from all mesne or final process from any court, to the extent and as provided in this code, except that a creditor or lien holder of a mobile home classified as a homestead under § 43–31–2 prior to January 1, 1973 shall not be cut off or subject to a homestead exemption. In addition, the homestead of a person seventy years of age or older and the unremarried surviving spouse of such person, so long as it continues to possess the character of a homestead, is exempt from sale for taxes.

SDCL 43–31–2:

The homestead must embrace the house used as a home by the owner thereof, being either, real property or a mobile home as hereinafter defined, and if he or she has two or more houses or mobile homes thus used at different times and places, such owner may select which he or she will retain as a homestead.

It must not embrace more than one dwelling house or any other buildings except such as are properly appurtenant to the homestead as such; but a shop, store, or other building situated on real property and really used or occupied by the owner in the prosecution of his own ordinary business may be deemed appurtenant to such homestead.

Mobile homes shall include any vehicle without motive power which can provide adequate, comfortable, all season quarters for the purpose of making a residence thereof and which vehicle is larger than two hundred forty square feet, measuring at the base thereof. Such mobile home must be registered in South Dakota at least six months prior to the claim of exemption.

SDCL 43–31–3:

The homestead may contain one or more lots or tracts of land with the buildings thereon and other appurtenances, subject to the limitations contained in this code, but must in no case embrace different lots and tracts unless they are contiguous, or unless the are habitually and in good faith used as part of the same homestead.

SDCL 43–31–4:

If within a town plat the homestead must not exceed one acre in extent, and if not within a town plat, it must not embrace in the aggregate more than one hundred sixty acres. If the homestead is claimed upon any land, the title or right of possession to which was acquired or claimed under the laws of the United States, relating to mineral lands, then the area of the homestead, if within a town plat, shall not exceed one acre, and if without a town plat it must not exceed forty acres, if title thereto has been acquired as a placer claim, but if the title has been acquired under the laws of Congress as a lode mining claim, the area of such homestead shall not exceed five acres.

[¶ 17.] The debtor argues that by enacting these provisions, the Legislature has sufficiently "limited and defined the value of the homestead." While we agree that these provisions of South Dakota law limit and define a homestead, we do not believe that such provisions adequately set

forth a limitation on the value of a homestead exemption. Our early precedent makes clear that those statutes serve only to limit what may constitute a homestead and do not necessarily limit what portion of the value of a homestead may be exempted; nevertheless, we need not rest on that authority. The record of the Constitutional Debates of 1885 reveals the delegates' intent in regard to the constitutional provision at issue here.

[¶ 18.] During the Constitutional Debates of 1885, the delegates addressed the homestead provision. 1 Constitutional Debates, South Dakota, pp. 551–62 (1885). They debated about what sum might be placed within the provision. *Id.* At least some of the delegates felt that the provision should specify a *monetary* limitation. *Id.* Those delegates condemned as "repulsive" a similar exemption in Kansas that permitted an unlimited value. *Id.* at 554. They reasoned that citizens might use the provision as a means for discharging otherwise valid debts, thus, adversely affecting the credit of all South Dakotans. *Id.* at 554–55. One delegate urged, "Let us place these exemptions low, and *force* every man to be honest as far as we can." *Id.* at 553. Some proposed that the homestead exemption be limited to $300. *Id.* at 559. Others, however, recognized the wisdom of placing the onus of the limitation squarely on the Legislature. Delegate Neill, of Grant County, thoughtfully asserted:

I think we are getting into the subject of legislation in this discussion of the minority report. We are here dealing with fundamental principles; the principle that is embodied in the majority report, it is necessary to put into the Constitution; we must trust something in the [L]egislature; they can certainly fix this satisfactorily to the temper of the people at the time they are elected.

*Id.* at 553. The delegate from Turner County also spoke of the prudence of deferring any determination on the amount of the exemption to the Legislature when he stated:

The majority of the Committee who framed this article for the Constitution had in view the article from Wisconsin, thinking it would answer the purpose for Dakota just as it would for Wisconsin.

It exempts simply the homestead, and leaves the [L]egislature to determine its value; whatever they may determine is the reasonable value to place upon the homestead, it will so remain. We thought it was going too much into legislation for this Convention to fix that amount.

It also exempts a reasonable amount of personal property, it does not state the amount; we think the necessity for exemptions is liable to change at any time; what may be a reasonable exemption of personal property today in ten or twenty years from now may be very unreasonable. So it was thought better to leave this matter entirely to the [L]egislature and let them fix the amount of the exemptions, real and personal; as they think the people demand. The [L]egislature comes directly from the people and they will know just exactly what they want.

We are of the *opinion that this matter ought to be left entirely to the [L]egislature.*

*Id.* at 555. Ultimately, those urging that the Legislature be vested with the responsibility of setting the limit prevailed. However, the debates leave no question that the delegates contemplated that the Legislature would place a monetary limit on the exemption.

[¶ 19.] Having resolved the question whether our Constitution confers the responsibility on the Legislature to place a

monetary limit on the amount of an exemption that may be claimed by a debtor in the affirmative, we next ascertain whether our Legislature has acted within the parameters set by the Constitution.

[¶ 20.] SDCL 43–45–3 provides:

A homestead:

(1) As defined and limited in chapter 43–31, is absolutely exempt; or

(2) In the event such homestead is sold under the provisions of chapter 21–19, or is sold by the owner voluntarily, the proceeds of such sale, not exceeding the sum of thirty thousand dollars, is absolutely exempt for a period of one year after the receipt of such proceeds by the owner. *Such exemption shall not be limited to thirty thousand dollars for a homestead of a person seventy years of age or older or the unremarried surviving spouse of such person so long as it continues to possess the character of a homestead.*

(Emphasis added.) It is clear that the Legislature has fulfilled its constitutional mandate of establishing a homestead exemption limit for those citizens who are under the age of seventy.

[¶ 21.] At issue here, however, is whether the last sentence of the section violates that mandate.[3] This sentence was added to the statute in 1980. We cannot reconcile the phrase "[s]uch exemption shall not be limited" with the constitutional requirement that the homestead exemption shall be "limited." The language of the statute is incompatible. An exemption that "shall not be limited" is not "limited." Therefore, we declare the statute unconstitutional insofar as it purports to confer an unlimited homestead exemption for those over seventy years of age. We also conclude that this sentence is entirely severable from the remainder of the statute, and thus, only the last sentence is unconstitutional. *See South Dakota Educ. Ass'n v. Barnett,* 1998 SD 84, ¶ 33, 582 N.W.2d 386, 394.

[¶ 22.] Our decision does not, as the State suggests, "subvert[ ] the intent of the Legislature to provide a potentially broader homestead right to those over the age of seventy." Clearly, the Legislature has broad and liberal discretion of setting the exemption limit. However, that discretion is not boundless. The Legislature simply must place a monetary value on that limit.

[¶ 23.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.

---

3. The State points to our decision in *Beck v. Lapsley,* 1999 SD 49, 593 N.W.2d 410, as significant here. It is not. In *Beck,* the constitutionality of the statute was not in issue.