#24704-rev & rem-JKK

**2008 SD 24**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

METROPOLITAN LIFE INSURANCE
COMPANY; METROPOLITAN INSURANCE
AND ANNUITY COMPANY; NEW ENGLAND
LIFE INSURANCE COMPANY; METLIFE
INVESTORS USA INSURANCE COMPANY;
GENERAL AMERICAN LIFE INSURANCE
COMPANY; PARAGON LIFE INSURANCE
COMPANY; METLIFE INVESTORS
INSURANCE COMPANY; METROPOLITAN
PROPERTY AND CASUALTY INSURANCE
COMPANY; METROPOLITAN GROUP
PROPERTY AND CASUALTY INSURANCE
COMPANY; ECONOMY PREMIER
ASSURANCE COMPANY; METROPOLITAN
TOWER LIFE INSURANCE COMPANY; AND
METROPOLITAN DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY,                    Plaintiffs and Appellees,

     v.

PAUL KINSMAN, Secretary, South Dakota
Department of Revenue; MERLE SCHEIBER,
Director, Division of Insurance; and the STATE
OF SOUTH DAKOTA,                    Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE RODNEY J. STEELE
Judge (Retired)

* * * *

ARGUED ON FEBRUARY 13, 2008

OPINION FILED **03/26/08**

\* \* \* \*

RONALD G. SCHMIDT of
Schmidt, Schroyer, Moreno,
  Lee & Bachand
Rapid City, South Dakota

Attorneys for plaintiffs
and appellees.

TIMOTHY M. GEBHART
ERIC R. JOHNSON of
Davenport, Evans, Hurwitz
  and Smith
Sioux Falls, South Dakota

Attorneys for defendants
and appellants.

#24704

KONENKAMP, Justice

[¶1.]　　　　An out-of-state insurance company brought suit against South Dakota asserting that its taxing method in SDCL Chapter 10-44 unconstitutionally favors domestic insurers. According to the company, from 1970 to the present, the State imposed a higher tax on foreign insurers solely because they are nonresidents. In light of a United States Supreme Court decision prohibiting discrimination based on residence alone, the insurance company sought relief. After a trial to the circuit court, SDCL 10-44-2 and SDCL 10-44-4 through SDCL 10-44-6 were declared unconstitutional from 1970 to the present. The State appeals, and we reverse.

## Background

[¶2.]　　　　Metropolitan Life Insurance Company, et al. (MetLife) brought suit against the Secretary of the South Dakota Department of Revenue and Regulation, the Director of the South Dakota Division of Insurance, and the State of South Dakota (collectively the State or South Dakota), asserting that the State's tax structure on insurance premiums and annuity considerations has been and is unconstitutional. According to MetLife, from 1970 to the present, SDCL 10-44-2 and SDCL 10-44-4 through SDCL 10-44-6 violate the equal protection clause of the United States and South Dakota constitutions.

[¶3.]　　　　In 1981, MetLife filed an administrative claim for a refund of its premium taxes paid. The claim was denied because of MetLife's failure to comply with certain statutory requirements. The parties agreed to stay all appeals while the United States Supreme Court considered the constitutionality of state insurance tax structures. The Supreme Court answered the question in 1982, but the parties

continued to agree to stay all appeals. Ultimately, in 2004, on appeal to the circuit court, MetLife's administrative claim was consolidated with its constitutional challenge. The State and MetLife stipulated that the circuit court should only consider whether South Dakota's insurance premium and annuity tax structure violated the equal protection clause in the constitutions of the United States and South Dakota. After a trial to the court in 2007, findings of fact and conclusions of law and a judgment were entered declaring SDCL 10-44-2, and SDCL 10-44-4 through SDCL 10-44-6 unconstitutional from 1970 to the present. The court also awarded disbursements to MetLife of $8,871.62. The State appeals asserting that the premium and annuity tax structure is and has always been constitutional and that the court abused its discretion when it imposed certain costs against the State.[1]

---

1. We review a challenge to the constitutionality of a statute de novo. *State v. Moschell*, 2004 SD 35, ¶13, 677 NW2d 551, 558 (citing *Boever v. S.D. Bd. of Accountancy*, 1997 SD 34, ¶7, 561 NW2d 309, 311 (citing *Green v. Siegel, Barnett & Schutz*, 1996 SD 146, ¶7, 557 NW2d 396, 398)).

> We presume that statutes are constitutional unless shown otherwise beyond a reasonable doubt. *Accounts Management, Inc. v. Williams*, 484 NW2d 297, 299 (SD 1992). If possible, we interpret statutes reasonably to find them constitutional and valid. *State v. Krahwinkel*, 2002 SD 160, ¶43, 656 NW2d 451, 466. The party asserting the unconstitutionality of a statute bears the burden of persuasion. *Id*.

*In re* Davis, 2004 SD 70, ¶4, 681 NW2d 452, 454. A court's award of disbursements under SDCL 15-17-37 is reviewed under an abuse of discretion standard. *Ridley v. Lawrence County Comm'n*, 2000 SD 143, ¶12, 619 NW2d 254, 259 (citing *Michlitsch v. Meyer*, 1999 SD 69, ¶10, 594 NW2d 731, 733 (citations omitted)).

## Analysis and Decision

[¶4.] A tax has been imposed on insurance company business here since before statehood. *See* Cutting v. Taylor, 3 SD 11, 51 NW 949 (1892) (discussing the Territory's tax on insurance companies). To facilitate its tax scheme, South Dakota, like many other states, places insurance companies into one of three classifications: domestic, foreign, and those not licensed to do in-state business. *See* SDCL 10-44-2 (2007). A domestic insurance company is "any company organized under the laws of South Dakota[.]" SDCL 10-44-1(3) (2007). A foreign company is one organized under the laws of a different jurisdiction. *Id.* (4). Unlicensed companies include those not licensed in South Dakota, as well as those not authorized to do business here. *See* SDCL 10-44-2(3).

[¶5.] Until 1982, the State taxed each classification at a different rate. SDCL 10-44-2 (1981). In the 1980s, however, the United States Supreme Court began to scrutinize disparate tax treatment of insurance companies. *See* Western & Southern Life Ins. Co. v. State Bd. of Equalization, 451 US 648, 101 SCt 2070, 68 LEd2d 514 (1981) (upholding a state's retaliatory tax against foreign insurance companies because it was rationally related to a legitimate state interest); Metropolitan Life Ins. Co. v. Ward, 470 US 869, 105 SCt 1676, 84 LEd2d 751 (1985) (invalidating a tax that discriminated against a foreign insurer based on its residence). In 1982, South Dakota amended its tax structure and imposed an identical tax on all insurers, regardless of their classification. *See* SDCL 10-44-2 (2007).

[¶6.]     Nevertheless, MetLife argues that South Dakota's tax structure from 1970 to the present continues to violate the United States and South Dakota constitutions.  It contends that the tax structure discriminates against foreign insurers based on residence, similar to the scheme invalidated in *Ward*.  Because South Dakota substantially revised its insurance tax statutes in 1982, we divide the issues in this appeal into:  *Tax Structure from 1970-1981*; *Tax Structure from 1982-Present*.

### 1.  Tax Structure from 1970-1981

[¶7.]     From 1970 to 1981, South Dakota taxed insurance companies at different rates depending on the classification of the company and the type of insurance transaction.[2]  SDCL 10-44-2 (1981).  The following table shows the tax rates for each classification from 1970-1981:[3]

---

2.    In *State v. American Bankers Ins. Co.*, 374 NW2d 609, 615-17 (SD 1985) (citing SDCL 10-44-2(3)), the disparate tax rate for unlicensed insurers in South Dakota was ruled unconstitutional.

3.    From 1970-1978, SDCL 10-44-2 provided in part:

> Except as expressly provided in this chapter, there is hereby levied a tax on all companies doing an insurance business in this state, at the rates hereinafter specified; . . .
>> (1) On each domestic company, one-half of one per cent of premiums and one-half of one per cent of the consideration for annuity contracts;
>> (2) On each foreign company, two and one-half per cent of premiums, and one and one-fourth per cent of the consideration for annuity contracts;
>> (3) On each insurer not licensed or not authorized to do business in this state, one and one-half times the amount payable by foreign insurers as provided by this section, or four per cent of the premiums whichever is the greater.

From 1978-1981, SDCL 10-44-2(1), (2), and (3) provided:

(continued . . .)

|  | **1970-1978** | **1979-1981** |
|---|---|---|
| **Domestic** | 0.5% (Premiums) <br> 0.5% (Annuity Consideration) | 0.75% (Premiums) <br> 0.5% (Ann. Cons.) |
| **Foreign** | 2.5% (Premiums) <br> 1.25% (Ann. Cons.) | 2.5% (Premiums) <br> 1.25% (Ann. Cons.) |
| **Unlicensed** | 1.5% the Foreign rate or 4%, whichever is higher | 1.5% the Foreign rate or 4%, whichever is higher |

*Id.* Also during the same time, a foreign insurer was offered a credit on its tax obligation if it "owns and substantially occupies any building in this state as a regional home office. . . ."[4] SDCL 10-44-4 (1981). The available credit was a maximum of fifty percent of the tax levied and a deduction for all *ad valorem* taxes

_____

(. . . continued)

> (1) On each domestic company, three-quarters of one percent of premiums and one-half of one percent of the consideration for annuity contracts;
> (2) On each foreign company, two and one-half percent of premiums, and one and one-fourth percent of the consideration for annuity contracts;
> (3) On each insurer not licensed or authorized to do business in this state, one and one-half times the amount payable by the foreign insurers as provide by this section, or four percent of the premiums whichever is greater.

4.      A regional home office was defined as

> an office performing, for an area covering three or more states, the selling, underwriting, issuing and servicing of insurance, including the following functions relating thereto: actuarial, medical (where required), law, approval or rejection of applications for insurance and issuance of policies thereon, approval of payment of all types of claims, maintenance of records to provide policyholder information and service, advertising and publications, public relations, supervision and training of sales and service forces.

SDCL 10-44-5 (1981).

paid on the building and adjacent land and any taxes paid for property used in the operation and maintenance of the regional home office.[5] *Id.*

[¶8.] On February 26, 1981, the South Dakota Division of Insurance received from MetLife a claim for refund of all premium taxes paid for the years 1970 through 1979. It later made a similar claim for taxes paid in 1980. In March 1982, the Director of Insurance ruled on these claims. He concluded that the tax was constitutional, and, in addition, he ruled that Met Life's claims for taxes paid from 1970 through 1980 were barred by its failure to comply with SDCL 10-27-2 and SDCL Chapter 10-55. By stipulation, no appeals were taken until this present action.

[¶9.] Notwithstanding the stipulation to stay all appeals, the record is not clear why MetLife's refund claims for an alleged discriminatory tax beginning in 1970 have been left in suspense for so long, especially after 1985, when the Supreme Court struck down taxing arrangements of the type MetLife here complains. Now we are asked, some twenty-six years after SDCL 10-44-2 (1981) was repealed, to rule on its constitutionality. Deciding the constitutionality of a legislative enactment is a solemn and momentous occasion. We do not approach such tasks lightly; nor do we engage these questions as a matter of first resort. Indeed, we refrain from hasty ventures into constitutional analysis until after any preliminary obstacles have been surmounted and judgment is unavoidable.

---

5. The credits and reductions could not reduce the tax obligation to less than 20% of the tax otherwise payable. SDCL 10-44-4 (1981).

[¶10.]     That the parties have stipulated that we treat the constitutional challenge first in no way obviates our duty to refrain from premature decision making.[6]  We do not answer hypothetical questions or dispense advisory opinions. *Boever*, 526 NW2d at 750.  If MetLife fails to overcome all preliminary issues yet to be decided by the circuit court, its constitutional challenge may never come before us.  Justiciability—the conception that an actual and substantial controversy must be at hand before a decision can be rendered—cannot be conferred by stipulation or consent of the parties.  Danforth v. City of Yankton, 71 SD 406, 412, 25 NW2d 50, 53 (1946).  In our tripartite form of government, where legislative enactments are entitled to every presumption of legitimacy, erosion of our system of separation of powers might result from the indiscriminate passing on the constitutionality of those enactments through anticipatory opinions.  Thus, we conclude that the constitutionality of the former 1970-1981 statutes is not properly before us, and we decline to decide the question until such time as the matter is fully justiciable.

### 2.  Tax Structure from 1982-Present

[¶11.]     In 1982, the Legislature amended the insurance tax structure to impose the same tax on all insurers, regardless of their classification.[7]  SDCL 10-

---

6.     The stipulation states that the court was to determine "the constitutional validity of the statutes without the same being a waiver of or other bar to [MetLife's] subsequent right to seek further relief if such statutes are declared unconstitutional[.]"

7.     SDCL 10-44-2 (2007) provides in part:

> Any company doing insurance business in this state shall pay a tax at the rates specified in this section. . . .

(continued . . .)

#24704

_____

(. . . continued)

(1) On each domestic company, two and one-half percent of premiums, except for life insurance policies, other than credit life as defined in chapter 58-19, of a face amount of seven thousand dollars or less, for which the rate is one and one-fourth percent of premiums; and one and one-fourth percent of the consideration for annuity contracts. However, the rate for life insurance and annuities shall be computed as follows:

(a) Two and one-half percent of premiums for a life policy on the first one hundred thousand dollars of annual premium, and eight one-hundredths of a percent for that portion of a policy's annual life premiums exceeding one hundred thousand dollars; and

(b) One and one-fourth percent of the consideration for an annuity contract on the first five hundred thousand dollars of consideration, and eight one-hundredths of a percent for that portion of the consideration on an annuity contract exceeding five hundred thousand dollars. . . .

(2) On each foreign company the rate shall be computed as follows:

(a) Two and one-half percent of premiums, except for life insurance policies, other than credit life as defined in chapter 58-19, of a face amount of seven thousand dollars or less, for which the rate is one and one- fourth percent of premiums;

(b) Two and one-half percent of premiums for a life policy on the first one hundred thousand dollars of annual premium, and eight one-hundredths of a percent for the portion of a policy's annual life premiums exceeding one hundred thousand dollars; and

(c) One and one-fourth percent of the consideration for an annuity contract on the first five hundred thousand dollars of consideration, and eight one-hundredths of a percent for that portion of the consideration on an annuity contract exceeding five hundred thousand dollars;

(3) On each insurer not licensed or not authorized to do business in this state the rate shall be computed as follows:

(a) Two and one-half percent of premiums, except for life insurance policies, other than credit life as defined in chapter 58-19, of a face amount of seven thousand dollars or less, for which the rate is one and one- fourth percent of premiums;

(b) Two and one-half percent of premiums for a life policy on the first one hundred thousand dollars of annual premium, and eight one-hundredths of a percent for that portion of a policy's annual life premiums exceeding one hundred thousand dollars; and

(c) One and one-fourth percent of the consideration for an annuity contract on the first five hundred thousand dollars of

(continued . . .)

44-2 (2007). In addition, "any insurer" subject to tax under SDCL 10-44-2 is allowed a credit for having a principal or regional home office in South Dakota.[8] SDCL 10-44-4 (2007).

[¶12.] Although foreign and domestic insurers are taxed equally, MetLife maintains that the statutory scheme is unconstitutional in operation and practical effect. It argues that we must consider SDCL 58-5-93 when evaluating whether the tax statutes in SDCL Chapter 10-44 are constitutional. SDCL 58-5-93 mandates that a domestic insurer locate its principal place of business in South Dakota. According to MetLife, because a domestic company is *required* to locate its principal place of business here, a domestic company has to do *nothing* to receive the lower tax, but a foreign insurer must take "the affirmative and substantial step of

_____

(. . . continued)
> consideration, and eight one-hundredths of a percent for that portion of the consideration on an annuity contract exceeding five hundred thousand dollars[.]

8.    SDCL 10-44-4 (2007) provides in part:

> Any insurer subject to payment of tax provided for in § 10-44-2, and which has in this state its principal office, or a regional home office as defined in § 10-44-5, for over one-half the tax year is entitled to the following credits and deductions against such tax:
>   (1) An amount equal to fifty percent of the tax as determined under § 10-44-2; and
>   (2) An amount equal to ad valorem taxes or payments made in lieu of taxes paid by such insurer, whether direct or in the form of rent, on that proportion of the premises occupied as a principal or regional home office during the year next preceding the filing of its annual tax return.
>
> However, in no event shall such credits and deductions reduce the amount of tax to less than thirty percent of the amount of the tax otherwise payable without the application of the credit provided by
> (continued . . .)

establishing a principal office or regional home office in the State[.]" In MetLife's view, because of SDCL 58-5-93, the State still discriminates against foreign insurers based on their residence.

[¶13.]     To prevail on an equal protection challenge, MetLife must first establish that the statutory scheme "creates arbitrary classifications among citizens." *See Davis*, 2004 SD 70, ¶5, 681 NW2d at 454 (citation omitted); *see also* State v. Black Hills Transp. Co., 71 SD 28, 32-33, 20 NW2d 683, 685 (1945) (the State has flexible power to classify for purposes of taxation). As we recognized in *State v. Krahwinkel*, "classification is primarily for the Legislature and we will not interfere 'unless the classification is clearly arbitrary and unreasonable.'" 2002 SD 160, ¶18, 656 NW2d 451, 460 (quoting Berens v. Chicago Milwaukee, St. Paul & Pacific R.R. Co., 80 SD 168, 120 NW2d 565, 570-71 (1963)). "Equal protection does not require that all persons be treated identically, but it does require that distinctions have some relevance to the purpose for which classifications are made." *Id.* ¶21.

[¶14.]     When reviewing the constitutionality of SDCL 10-44-2 and SDCL 10-44-4 through SDCL 10-44-6, we will consider other related enactments. *See* Faircloth v. Raven Industries, Inc., 2000 SD 158, ¶6, 620 NW2d 198, 201 (citations omitted). SDCL 58-5-93 relates to SDCL 10-44-4 because both implicate an insurer's requirement to maintain an in-state office. Through SDCL 58-5-93,

---

(. . . continued)
      this section. Any insurer who qualifies for a credit pursuant to this
      section shall meet the requirements provided for in § 58-5-93.

"[e]very domestic insurer shall have and maintain its principal place of business and home office in this state[.]" And, through SDCL 10-44-4, "any insurer" desiring a credit on their tax obligation must maintain a principal or regional home office in South Dakota.

[¶15.]        Interpreting SDCL 58-5-93 with the tax structure in SDCL Chapter 10-44, we do not find that a domestic insurer is entitled to a credit *as a matter of law* or that the domestic insurer must do *nothing* to receive the lower tax rate. That SDCL 58-5-93 imposes a mandatory obligation on the domestic company to maintain its principal place of business here does not result in a foreign insurer being discriminated against. The domestic insurer is not given the credit simply by being a domestic company. Rather, it must establish and maintain an office here, not only to qualify for the credit, but also to be considered a domestic insurance company. A foreign insurer, on the other hand, is not *required* to maintain an office here to do business in the State. It must, however, maintain a principal or regional home office in South Dakota to receive the available credit.

[¶16.]        It is MetLife's business decision that determines whether it pays a higher tax, not an unequal statutory scheme. There is no disparate treatment when both types of insurers are burdened by being required to do similar actions (maintain an office here) to obtain a credit on their tax obligation. There is no arbitrary or unreasonable classification. *See* State v. Alabama Municipal. Ins. Corp., 730 So2d 107, 111 (Ala 1998) (upholding a tax statute that granted credits "based on objective, clearly ascertainable criteria"). The current statutory scheme affords both domestic and foreign insurers a favorable tax rate after both insurers

maintain a qualifying office in the State. The criteria are clear and objective and it is the insurer's business decision that determines its tax, not any discrimination by the State.

[¶17.] Nonetheless, MetLife insists that the State's statutory scheme still impermissibly burdens foreign insurers when the definition of a regional home office in SDCL 10-44-5 is considered. From 1982 until 2003, a regional home office was defined to require an insurer to do business with at least two states.[9] *See* SDCL 10-44-5 (1983). According to MetLife, a domestic company does not maintain a regional home office, but a principal place of business, and therefore, it is only required to do business with one state. Because a foreign insurer would likely maintain a regional home office, MetLife argues that the application of the tax statutes results in discrimination based on residence.[10]

[¶18.] "We presume that statutes are constitutional unless shown otherwise beyond a reasonable doubt." *Davis*, 2004 SD 70, ¶4, 681 NW2d at 454 (citing *Accounts Management, Inc*, 484 NW2d at 299). "Our function is not to decide if a

---

9. SDCL 10-44-5 (1983) provided:

   A regional home office, for the purposes of § 10-44-4, means an office performing, for an area covering two or more states, the selling, underwriting, issuing and servicing of insurance, including the following functions relating thereto: Actuarial, medical (where required), law, approval or rejection of applications for insurance and issuance of policies thereon, approval of payment of all types of claims, maintenance of records to provide policy holder information and service, advertising and publications, public relations, supervision and training of sales and service forces.

10. In 2004, the Legislature revised SDCL 10-44-5 to require the regional office to cover "one or more states[.]" Therefore, from 2004 to the present, there is
   (continued . . .)

legislative act is unwise, unsound, or unnecessary, but rather, to decide only whether it is unconstitutional." State v. Allison, 2000 SD 21, ¶5, 607 NW2d 1, 2. MetLife bears the burden of proving that there is no reasonable basis for the Legislature's decision to define a regional home office to require service covering at least two states. *See id.*

[¶19.]      MetLife has not established how it was unreasonable for the Legislature to believe that a regional home office would service at least two states, and therefore, include that requirement in its definition. That a "regional" office would serve more than one area is not an unreasonable concept. Further, even considering that a foreign insurer is most impacted by the definition, the type of alleged discrimination forbidden by *Ward* has not been established. *See* 470 US at 878, 105 SCt at 1682, 84 LEd2d 751. The statutory scheme with SDCL 10-44-5 (1981) does not result in a foreign insurer being taxed at a higher rate solely based on its residence. This tax structure affords a foreign insurer the same tax rate if that foreign insurer maintains a principal or regional home office here.

[¶20.]      Finally, MetLife contends that the tax structure from 1982 to the present is unconstitutional because under SDCL 10-44-4 "[a]ny insurer who qualifies for a credit pursuant to this section *shall* meet the requirements provided for in § 58-5-93." (Emphasis added). Where there are two possible interpretations, one by which a statute would be unconstitutional and the other by which it would

_____

(. . . continued)
    no difference in what is required of a foreign insurer if it decides to maintain a regional home office here.

be valid, we will interpret the statute in a constitutional manner. *Crowley v. State*, 268 NW2d 616, 619 (SD 1978). The challenged statutory language was not added by the Legislature until 2004. Although SDCL 10-44-4 states that "any insurer" must comply, a plain reading of SDCL 58-5-93 reveals that the requirement would implicate *only* domestic insurance companies. SDCL 58-5-93 obviously relates to domestic insurers. It begins by including "Every domestic insurer" not "any insurer." *Id.* It would be illogical to read SDCL 10-44-4 to require that a foreign company open a principal place of business in South Dakota (in compliance with SDCL 58-5-93) before qualifying for the credit. The requirement in SDCL 10-44-4 that "any insurer" must comply with SDCL 58-5-93 applies to domestic companies, as that is all SDCL 58-5-93 encompasses.

[¶21.] South Dakota's current statutory scheme does not favor the "home team" or give domestic insurers a lower tax rate simply based on their residence in the State. While a domestic insurer is *required* to maintain its principal place of business here, a foreign insurer has the option of receiving the same favorable tax rate by opening a principal or regional home office in South Dakota. Therefore, it is the foreign insurer's business decision that determines its ultimate tax rate, not discrimination by the State.

[¶22.] Because it did not prevail on its claim as required by SDCL 15-17-37, we reverse the court's award of disbursements to MetLife.

[¶23.] Reversed and remanded.

[¶24.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.