IDA M. OLIVER *et al.* V. JOHN SAMPLE.
No. 14,416.   (84 Pac. 138.)
SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP — *Husband and Wife — Real-estate Transactions—Oral Trust.*   Where a man conveys land to his wife by warranty deed, knowing that certain creditors are threatening suit on a promissory note, and he expects that they will come upon him for the debt, for which he is surety, and such deed is recorded, and thereafter he and his wife sell the land, and she informs the purchaser in the presence of her husband that she holds the title, and demands and receives the entire consideration therefor and deposits the same in a bank in her own name, and refuses on her husband's request to allow any portion thereof to be deposited in his name, to which he acquiesces after protesting, and thereafter the husband verbally contracts for the purchase of another tract of land, and she takes the deed thereto in her own name and pays therefor in full by a check on the funds deposited by her as aforesaid, she is the owner of the last-purchased land, although she at some time agreed verbally to hold it in trust for her husband.

2. DESCENTS AND DISTRIBUTIONS—*Property of Wife.*   If such wife subsequently dies intestate, and leaves as her only heirs her husband and several grandchildren, the offspring of her daughter by a former marriage, the surviving husband inherits a one-half interest in the land and the grandchildren the other one-half interest.

3. HOMESTEAD—*Remarriage of Husband—Partition.*   If, after the death of his wife, the husband again marries, and with his wife occupies the land referred to in the preceding paragraph as a home, he thereby acquires no homestead right to the land that will prevent the grandchildren from maintaining a suit for the partition thereof.

Error from McPherson district court; W. H. LEWIS, judge.   Opinion filed January 6, 1906.   Reversed.

STATEMENT.

PLAINTIFF in error Ida M. Oliver brought suit in the district court of McPherson county against the defendant in error for the partition of a tract of land in that county, and, they not joining in the petition, she made

her brothers and sisters parties defendant. Some of the brothers and sisters filed answers praying for the partition, and others entered no formal appearance. All join in the petition in error here.

The defendant John Sample set up: (1) A general denial of plaintiff's claims. (2) That he bought and paid for the land, and, under a verbal agreement with his wife and without any fraudulent intent, had the same deeded to his wife, who was to hold it in trust for him; that immediately after such purchase he and his wife took possession thereof, and he made and paid for certain improvements thereon. (3) That, if the claims of plaintiff and other claimants were true, the land would not be subject to partition for the reason that the intestate left no children; that she and her husband occupied the land as a homestead till her death, and he had so occupied it ever since. He then set up nine individual claims against the grandchildren, the greater number of which were not sufficiently stated to constitute causes of action in favor of any one as against the alleged individual debtor, and none of which was alleged to be a lien upon the land or in any way connected with it. The plaintiff and cross-petitioners moved to strike out these nine alleged defenses, which motion was denied.

*George A. Vandeveer,* and *Frank L. Martin,* for plaintiffs in error.

*Grattan & Grattan,* and *John D. Milliken,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: For the error of the court in denying the motion to strike out the irrelevant defenses the judgment should be reversed. While neither the verdict nor judgment seems to have been based on these alleged defenses, there was evidence offered with reference to them, and the plaintiffs in error were evidently prejudiced thereby. They were entitled to a

trial on the issues tendered by the petition and cross-petitions, stripped of every irrelevant matter.

The defendant John Sample was allowed to testify, over the objection of plaintiff, to communications had with the deceased while the relation of husband and wife existed between them, and also to testify in his own behalf to transactions had with the deceased personally, the adverse parties being heirs at law of such deceased and having acquired their title to the cause of action immediately from her. It is claimed, however, that the attorney for the adverse parties waived these objections by transcending the bounds of cross-examination and asking the witness about other communications and transactions not referred to in the examination in chief, and this in a measure is true.

However, the following special findings of the jury, regardless of the general verdict, entitle the grandchildren to a judgment of partition as prayed for, viz.:

"(11) Ques. Did Sample, in June, 1892, by general warranty deed, convey the said southwest quarter of section 26 to Maria Sample? Ans. Yes, in trust for John Sample.

"(12) Q. Did he know at that time that some creditor was threatening suit upon a note, and did he expect that such creditor would come onto him for a debt upon which he was surety? A. Yes.

"(13) Q. Did Maria Sample inform the purchaser in the presence of Sample that she owned the said southwest quarter of section 26? A. She informed the purchaser that the deed was in her name.

"(14) Q. Did Thiessen, the purchaser, pay all the purchase-money for said southwest quarter of section 26 to said Maria Sample? A. Yes.

"(15) Q. Did Maria Sample, on the 26th day of February, 1902, refuse to allow any of the proceeds of the said land, either the notes and mortgage or money, to be placed in the name of John Sample, and was he angry on that account? A. Yes."

"(18) Q. Was the land in controversy paid for by the money paid to Maria Sample by Thiessen when he purchased said southwest quarter of section 26? A. Yes."

Oliver v. Sample.

"(21) Q. Did Maria Sample agree to hold the land in controversy in trust for John Sample? A. Yes.

"(22) Q. If you answer 'yes,' when and where was said agreement made? And was it verbal or in writing? A. It was verbal, but no evidence as to time or place.

"(23) Q. If you answer question 21 'yes,' do you find that such agreement was proved by circumstantial evidence? A. Yes.

"(24) Q. If you answer question 23 'yes,' state upon what circumstances you base same. A. General circumstances.

"(25) Q. Did Maria Sample have the money in her name in the bank of McPherson, and did she issue and deliver the check in payment for the property in controversy? A. Yes."

Where land is conveyed or caused to be conveyed by a husband to his wife, he paying the entire consideration out of his own funds, there is no resulting trust presumed in his favor. To establish a resulting trust through a verbal agreement the evidence must be so clear and conclusive as to overcome the evidence of the deed, and such agreement must be made at or before the time of the conveyance.

None of these conditions exists in the case at bar. The land was conveyed to the wife, not by the husband, but by others; not by request, even of the husband, but in consideration of the purchase-price, which was paid by her out of funds received from other lands to which she had the title—her sole right to which funds she had asserted adversely to him, and to which he, after protest, had assented.

The judgment is reversed and the case is remanded, with instructions to render judgment in accordance with the views herein expressed.

All the Justices concurring.