No. 25,353.

LOUISE BANNER, *Appellee*, v. JOHN S. WELCH et al., *Appellants*.

SYLLABUS BY THE COURT.

1. JOINT TENANTS OF REAL ESTATE—*Neither Tenant Has Homestead Rights in Whole Estate.* When two or more persons buy real property and become owners thereof as joint tenants or tenants in common, one of them cannot, as against his cotenant, establish a homestead upon the whole estate.

2. SAME—*Equitable Action—Jurisdiction of Trial Court.* In a suit in equity to establish an interest in specific real property and for appropriate relief, the court, having acquired jurisdiction of the parties and of the subject matter and having found that plaintiff has a specific interest in the property, has power to so frame its decree as to meet the exigencies of the situation and to reach the ends of justice.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed April 5, 1924. Affirmed.

*William H. Thompson, Elbridge G. Wilson,* and *Wilbert F. Thompson,* all of Kansas City, Mo., for the appellants.

*George W. Littick, J. K. Cubbison,* and *William G. Holt,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is a suit to establish and enforce an interest in specific real property. It was tried to the court. Judgment was rendered for plaintiff and defendants have appealed.

The plaintiff, Mrs. Banner, and her husband, lived in Wyandotte county for many years, then moved to Butler, Mo., where they lived a few years when, Mr. Banner's health failing, they sold their real property, changing their assets into cash and notes secured by real-estate mortgages, and started south for his health. They stopped at Wichita to visit relatives and Mr. Banner died there about January 1, 1922. The defendant, John S. Welch, is plaintiff's nephew, the son of plaintiff's sister, born at plaintiff's home after his father's death and reared by plaintiff until he was twelve years of age. Plaintiff had no children of her own and the relations existing between her and "Johnny" were like that of mother and son. Plaintiff had always wanted John and his wife, Madaline, to live near, and once, at plaintiff's solicitation, the defendants sold their home at Wichita and moved to Missouri in order to live near plaintiff and her husband. When Mr. Banner died plaintiff wired defendants

and they went to Wichita. The meeting between them was affectionate. They returned with her to Wyandotte county, where Mr. Banner was buried. At that time defendants were living in a four-room cottage at 3005 Brown avenue, Kansas City, Kan., which they owned, but upon which there was a mortgage of $1,000. After the funeral plaintiff made two or three trips to Butler, Mo., returning to defendants' home. She wanted to buy a small farm and the defendants to live with her there, but defendant John S. Welch is a carpenter and, in a small way, a contractor, and did not want to move to a farm. Plaintiff suggested building a room on defendants' house or buying the cottage next door so she could live with or near defendants, but that plan was not carried out. This is what was done: The $1,000 mortgage on defendants' Brown avenue cottage was paid; that property was then traded for a four-acre unimproved suburban tract in Brenner Heights Acres in Wyandotte county and $400 cash difference paid. This tract was improved by building a modern five-room bungalow, garage, and chicken house and by setting out trees and shrubbery, and plaintiff and defendants went there to live, with most of the furniture new. By this time plaintiff had used all the cash she had at the time of the death of her husband, which she claims was about $2,600 after paying funeral expenses, and had sold her mortgages at Butler, Mo., for $5,200 and had used practically all of that. The title to the four-acre tract was in defendants, and they had placed an $800 mortgage upon it. For a few months in their new home the parties got along agreeably, then differences arose. Plaintiff contends that when her money was about gone, defendants, and especially Madaline, did not treat her well; that it became impossible for them to live together. A settlement was attempted without success and this suit was brought.

In the petition plaintiff recited the above facts with much detail and many innuendoes, and alleged that when the suburban tract was purchased it was agreed that she and defendants would purchase it together and improve and occupy it as a home, and that they would be joint owners of it in the proportion that each paid toward the purchase price and the costs of the improvements. That defendants had put into the property their equity in the Brown avenue property, which it is agreed was $1,800, and labor, $700, and that plaintiff had put in cash more than $6,000. That the title was to have been taken in the name of plaintiff and defendants, but because of her implicit trust in defendants she left that

matter to them and had given it no attention. She prayed the court to determine her interest in the property and to make such order as equity required.

Defendants denied that plaintiff had any title to the property or any agreement for, or right to, title therein, and claimed the property as their homestead; averred that plaintiff had made loans to them aggregating $2,600 without any agreement or even request that it be secured by a lien upon the homestead, and for which they were willing to give plaintiff their note, and averred that plaintiff had made gifts to them aggregating $1,400, which were not expected to be repaid; that these loans and gifts were made upon a verbal agreement that plaintiff might live with the defendants as a member of their family, which agreement they were ready and willing to perform.

After an extended trial the court found that the four-acre tract with its improvements is the joint property of plaintiff and defendants and was intended to be the home and homestead of the parties, and that it was owned in common by them; that plaintiff is entitled to receive $4,000 from the proceeds thereof; that there is a mortgage of $800 thereon; that manifestly the property could not be divided in kind between the parties and the court ordered that it be sold without appraisement or equity of redemption and out of the proceeds there be paid, first, the costs; second, the $800 mortgage; and third, to plaintiff $4,000, and the balance be brought into court to abide its further order.

Defendants appeal and complain that the court found plaintiff to be a joint owner with defendants in the property. We shall not attempt to weigh or even to discuss the conflicting evidence bearing specifically upon this point. We have examined it carefully and it sustains the court's findings. This makes it unnecessary to determine the question so ably argued by counsel for appellant as to what plaintiff must show to establish a lien upon the homestead, for ordinarily ownership is inconsistent with a lien, and plaintiff having established her joint ownership cannot also have, nor does she need, a lien.

Appellants argue that plaintiff, being a single woman, not the head of a family at the time this property was purchased, cannot acquire a homestead interest therein. Let that be conceded. Some of the wording of the court's decree is not well chosen, though from the entire decree his meaning is clear. It would have been just

as well to have omitted all references to a homestead in the decree, for, as we shall see, that becomes immaterial.

Appellants contend that this property is their homestead and that plaintiff cannot disturb or destroy their homestead interest in the property. The rule is well settled that when two or more parties buy real property, and become owners thereof as tenants in common, one of them cannot, as against his cotenant, establish a homestead upon the whole. All he can do is to establish a homestead as to creditors upon his separable interest or title. (*National Bank v. Kofflin,* 1 Kan. App. 599; *Tarrant v. Swain,* 15 Kan. 146; *Oliver v. Sample,* 72 Kan. 582, 84 Pac. 138; 15 A. & E. Enc. of L., 2d ed., 568, 570; 29 C. J. 849; 13 R. C. L. 573; *Livasy v. State Bk. of Redfield,* 185 Iowa 442; *Sieg v. Greene,* 225 Fed. 955; *Peets v. Wright,* 117 S. C. 409; *Baker v. Grayson,* 86 Okla. 159; *Leach v. Leach,* 223 S. W. [Tex. Civ. App.] 287.)

Appellants complain that the decree provided for a sale without period of redemption. In effect this decree is one in partition in which the court finds the plaintiff's interest to be $4,000, and defendants' interest the balance, both subject to the $800 mortgage. (Witnesses valued the property at from $7,000 to $9,000.) In a partition sale the statutory period of redemption does not apply.

Appellants complain that the decree provides for a sale without appraisement and, treated strictly as partition, that should have been done. But no suggestion is made that the respective shares of the parties in the property could be set off in kind or that either party would want to elect to take at the appraised value (and that in effect could be acomplished under the decree by defendants paying plaintiff $4,000) or of any possible prejudice to the rights of appellants by reason of this provision. Hence, if it was error at all it was harmless.

But this decree should not be treated strictly as one in partition. This is a suit in equity and the court, having jurisdiction of the parties and of the subject matter, has power to and should render such decree as is just and proper under all the facts and circumstances of the case. (*Harnden v. Hadfield,* 113 Kan. 525, 528; 215 Pac. 441.) In doing so he is not necessarily limited by analogous statutory provisions which are inadequate to meet the exigencies of the situation. In 21 C. J. 660, it is said:

"While certain equitable remedies are called for with sufficient frequency to create definite rules for framing the decrees in such cases, and equitable

relief may be effected or circumscribed by the nature of the subject-matter of the suit, and while in the remedial exercise of its power a court of equity proceeds with a discretion which is controlled by legal principles, as distinguished from arbitrary or capricious power, its power to grant relief is not circumscribed by any fast or technical rule, and the court has a broad discretion in framing its decrees in order to adapt the relief to the circumstances of particular cases. It will adjust the relief in such a way as to afford fair protection to the rights of all parties, and may grant any relief within the issues made by the pleadings. The primary object of a decree in equity is to reach the ends of justice. Equity procedure is usually elastic enough to accomplish this result, and the court shapes its decree accordingly."

The decree in this case was rendered under the power and authority of the court just mentioned and was framed to meet the necessities of the plaintiff and to safeguard the rights of the parties.

Finding no material error in the case, the judgment of the court below is affirmed.