#23904-a-JKM

**2006 SD 64**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DENNIS F. WISNER,                          Plaintiff and Appellee,

v.

ETHEL M. PAVLIN,                           Defendant and Appellant,

and

CorTrust Bank, NA.,                        Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE GENE PAUL KEAN
Judge

* * * *

CHARLES L. DOROTHY of
Dorothy Law Firm, P.C.                     Attorney for plaintiff
Sioux Falls, South Dakota                  and appellee.

MICHAEL A. HAUCK of
Bangs, McCullen, Butler,
 Foye & Simmons                            Attorneys for defendant
Sioux Falls, South Dakota                  and appellant.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 24, 2006

OPINION FILED **07/19/06**

#23904

MEIERHENRY, Justice.

[¶1.] Ethel Pavlin (Ethel) contests a court ordered partition sale of real property which she owns as a tenant in common with Dennis Wisner (Dennis). Ethel claims her homestead interest in the property prevents the partition. The trial court denied her claim and granted the partition. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

[¶2.] In 1999, Ethel purchased a home in Sioux Falls with Francis Wisner (Francis). Although the two were never married, Francis and Ethel held the property as joint tenants with right of survivorship. The two resided at the home together and maintained it as their principal residence. In 2002, Francis deeded his one-half undivided interest in the home to his son Dennis via quit claim deed for no consideration. Ethel did not consent to the conveyance nor sign the quit claim deed.

[¶3.] Francis died on September 24, 2004. Thereafter, Dennis brought this action requesting that the court order a partition sale of the property under his right as a cotenant. In response, Ethel asserted that her homestead interest precluded a partition sale. Ethel also counterclaimed against Dennis and sought a declaration that the 2002 quit claim deed was invalid since she did not join in the conveyance.

[¶4.] The parties stipulated to the facts as set forth above and submitted the case for the trial court's consideration. The court concluded that Francis validly transferred his interest in the property to Dennis via quit claim deed. The court agreed that Ethel has a homestead interest in the property, but the court concluded

-1-

that the homestead interest did not prevent partition. Ethel appeals from the trial

court's decision and presents two issues for our consideration:

## ISSUES

1. Whether the trial court erred in finding that Francis validly transferred his interest to Dennis via quit claim deed, even though Ethel, as joint tenant and homestead claimant, did not consent to or join in that conveyance and did not sign the deed.

2. Whether the trial court erred in ordering a partition sale of the property in which Ethel had a homestead interest which preceded her cotenancy with Dennis.

## DECISION

[¶5.] Before addressing the issues presented by Ethel, we set forth the

general principles applicable to homestead law in South Dakota. Article XXI,

Section 4 of the South Dakota Constitution provides, "The right of the debtor to

enjoy the comforts and necessaries of life shall be recognized by wholesome laws

exempting from forced sale a homestead, the value of which shall be limited and

defined by law, to all heads of families . . . ." Under the law, a homestead interest is

not "an estate in land, but is a *mere privilege* granted by the Legislature." *In re*

Estate of Mathison, 468 NW2d 400, 403 (SD 1991) (quoting *In re* Clouse's Estate, 63

SD 147, 150-51, 257 NW 106, 108 (1934)) (emphasis added). As we explained:

> The right of homestead is not, under the laws of this state, an
> estate in land, but is a mere privilege granted by the Legislature
> in fulfilling the constitutional mandate of section 4, art. 21, and
> consists of the right of occupancy given to the surviving spouse
> and minor children and does not pass by succession, showing
> clearly that when the need for protection for the family ceases,
> then there is no longer any reason for the homestead. The
> homestead exemption is therefore temporary and exists only so
> long as the conditions prevail under which it was allowed by the
> homestead law.

*Id.* (quoting *Clouse's Estate*, 63 SD at 150-51, 257 NW at 108). Therefore, the homestead interest "depends entirely upon the constitutional and statutory provisions." State ex rel. Bottum v. Knudtson, 65 SD 547, 276 NW 150, 151 (1937). The purpose of homestead legislation is to "protect the security of the home and family against the claims of creditors." *In re* Davis, 2004 SD 70, ¶4, 681 NW2d 452, 453; *see also* 40 AmJur2d Homestead § 4 (1999) (stating that "the primary purpose of homestead provisions is to place the property designated as a homestead out of reach of creditors while it is occupied as a home or, as otherwise stated, to secure to a debtor and his family necessary shelter from creditors"). This Court jealously guards the homestead exemptions guaranteed in both our constitution and statutes. *Davis*, 2004 SD 70, ¶4, 681 NW2d at 453. With those principles in mind, we turn to Ethel's issues on appeal.

*Validity of Deed*

[¶6.] We first consider whether the quit claim deed by which Francis transferred his interest to Dennis was valid. The parties agree that Francis and Ethel held the property as joint tenants with right of survivorship, and they acknowledge that if effective, the transfer of Francis' interest to Dennis via quit claim deed converted the joint tenancy between Francis and Ethel into a tenancy in common between Dennis and Ethel.[1] Therefore, the issue here is whether Ethel's

---

1. In several cases, we have explained the nature of joint tenancies:

> A joint tenancy exists when the four unities of time, title, interest, and possession are present. Destruction of one of the four unities terminates a joint tenancy and converts it into a tenancy in common. Under South Dakota law, a joint tenant

(continued . . .)

homestead interest in the property required her consent for the conveyance to be valid. Ethel claims that SDCL 43-31-17 mandates such a requirement. Therefore, this issue presents a question of law which we review de novo. *Estate of Howe*, 2004 SD 118, ¶16, 689 NW2d 22, 27 ("[C]onstruing a statute entails answering a question of law; thus, we review the trial court's statutory interpretation de novo.").

[¶7.] Ethel relies on SDCL 43-31-17 which restricts conveyance of a homestead without a spouse's concurrence. In relevant part, the statute provides:

> A conveyance or encumbrance of a homestead by its owner, if married and both husband and wife are residents of this state, is valid if both husband and wife concur in and sign or execute such conveyance or encumbrance either by joint instrument or by separate instruments.

SDCL 43-31-17. Ethel argues that this statute, in combination with her homestead interest, prevented Francis from conveying his interest in the property because Ethel did not know of, consent to, or sign the deed. Ethel asks us to parse the statute and recognize that because it applies to "[a] conveyance or encumbrance of a homestead by its *owner*," the consent of any and all record owners of property is required for the conveyance of a homestead to be valid. According to Ethel, the language of SDCL 43-31-17 "should be construed, based on the underlying policy of South Dakota's homestead laws, as prohibiting such transfers without the other homestead owner's consent and joinder."

---

(. . . continued)

> with right of survivorship has the right to unilaterally terminate the joint tenancy at any time without the knowledge or consent of the other joint tenants.

*In re Hoffman*, 2002 SD 129, ¶9, 653 NW2d 94, 98 (citations omitted).

[¶8.]     To construe SDCL 43-31-17 according to Ethel's argument would be to ignore its plain meaning.  The language of the statute clearly applies only to situations in which the homestead of a husband and wife is conveyed.  The statute modifies "owner" with "married," and it further requires that both husband and wife be residents of this state.  Thus, we cannot extend the consent requirements of SDCL 43-31-17 beyond what the Legislature has decreed, as evidenced by the language of the statute.

[¶9.]     Ethel argues that the Colorado case of *Knoche v. Morgan*, 664 P2d 258 (ColoCtApp 1983), supports her interpretation of SDCL 43-31-17.  In *Knoche*, the court stated that a statute similar to SDCL 43-31-17 "renders void any attempt by one of two joint tenants of properly homesteaded property to destroy the joint tenancy by unilateral conveyance." *Id.* at 259.  For that proposition, *Knoche* cited another Colorado case, *Wise v. Thomas*, 188 P2d 444 (1947).  Ethel's reliance on *Knoche* is flawed for one reason:  she and Francis were never married.  In both *Knoche* and *Wise*, the joint tenants were husband and wife.  More importantly, like SDCL 43-31-17, the Colorado statute upon which *Knoche* and *Wise* rely explicitly applies only to spouses.[2]  Therefore, the language of *Knoche* suggesting that the

---

2.     The relevant statute states:

> If the owner of [homestead] property . . . or the spouse of such owner records in the office of the county clerk and recorder of the county where the property is situate an instrument in writing . . . stating that the owner or the owner's spouse is homesteading such property . . . then the signature of both spouses to convey or encumber such property shall be required.

CRS 38-41-202(4).

statutory mandate applies beyond the spousal relationship is purely dicta, and we decline to rely upon it.

[¶10.]     As we have stated, "'The homestead right depends entirely upon constitutional and statutory provisions that create them.'"  Beck v. Lapsley, 1999 SD 49, ¶7, 593 NW2d 410, 413 (citations omitted); *see also* 40 AmJur2d Homestead § 3 ("[h]omestead law is purely statutory").  Therefore, we are confined to the language of our statutes to determine the extent of those rights.  As set forth above, the homestead interest is a privilege granted by the Legislature which wholly depends on constitutional and statutory provisions.  Therefore, when construing SDCL 43-31-17, we must constrain ourselves to the dictates of the language.  In light of the clarity of the statute's language, we cannot say that its consent requirement extends beyond the conveyance of a homestead by a married person. The trial court's conclusion of law in that regard was correct.

*Propriety of Partition*

[¶11.]     The second issue presented by Ethel is whether her homestead interest precludes a partition sale of the property.  The parties acknowledge that partition is appropriate for tenancies in common.[3]  They disagree, however, as to the effect of

---

3.     In South Dakota, a statute authorizes actions for partition:

> When several cotenants hold and are in possession of real
> property as partners, joint tenants, or tenants in common, in
> which one or more of them have an estate of inheritance or for
> life or lives or for years, an action may be brought by one or
> more of such persons for a partition thereof according to the
> respective rights of the persons interested therein and for a sale
> of such property or a part thereof, if it appear that a partition
> cannot be made without great prejudice to the owners.

(continued . . .)

Ethel's homestead interest[4] on the right of partition. Like the first issue, this issue

presents a question of law which we review de novo.

[¶12.]        Ethel first argues that the partition sale violates her rights under the

South Dakota Constitution to be free from a forced sale of her homestead. *See* SD

Const art. XXI, § 4. Ethel points to SDCL 43-31-1, the statute which implements

the relevant constitutional provision. SDCL 43-31-1 states:

> The homestead of every family, resident in this state, as
> hereinafter defined, so long as it continues to possess the
> character of a homestead is exempt from judicial sale, from

_____

(. . . continued)

SDCL 21-45-1.

4.        The parties do not challenge the trial court's conclusion that Ethel has a
homestead interest in the property. By way of background, however, we note
that the South Dakota Constitution mandates the enactment of statutes
which protect a debtor's homestead right. *See* SD Const. art XXI, § 4. In that
regard, the Legislature adopted statutes which are now set forth in SDCL
Chapter 43-31. The first statute in that chapter states in part:

> The homestead of every family, resident in this state, as
> hereinafter defined, so long as it continues to possess the
> character of a homestead is exempt from judicial sale, from
> judgment lien, and from all mesne or final process from any
> court, to the extent and as provided by statute.

SDCL 43-31-1. For purposes of the homestead laws, SDCL 43-31-14 defines
"family." It states:

> A widow or widower, though without children, while continuing
> to occupy the homestead used as such at the time of the death of
> the husband or wife, or any family, whether consisting of *one or
> more persons in actual occupancy of a homestead* as defined in
> this code, shall be deemed and held to be a family within the
> meaning of the laws of this state relating to homesteads.

SDCL 34-31-14 (emphasis added).

> judgment lien, and from all mesne or final process from any court, to the extent and as provided by statute.

Ethel argues that a partition sale constitutes a "judicial sale" under SDCL 43-31-1 and therefore violates the South Dakota Constitution. The relevant constitutional provision, however, states that "[t]he right of the *debtor* to enjoy the comforts and necessaries of life shall be recognized by wholesome laws exempting from forced sale a homestead, the value of which shall be limited and defined by law, to all heads of families . . . ." SD Const art. XXI, § 4 (emphasis added). In this case, we are not presented with the competing interests of a debtor and a creditor. Because Ethel does not assert her homestead interest against a creditor, the policy of homestead protection established by our constitution and statutes is not implicated. *See In re* Davis, 2004 SD 70, ¶4, 681 NW2d at 454 (recognizing that the purpose of homestead legislation is to protect "the security of the home and family *against the claims of creditors*"). Therefore, we need not determine whether a partition sale constitutes a "forced sale" or a "judicial sale," and we proceed to determine whether Ethel may assert her homestead interest against a cotenant.

[¶13.] None of our previous decisions directly address the effect of one cotenant's homestead interest on another cotenant's right of partition outside the context of a marriage. In *Wells v. Sweeney*, 16 SD 489, 94 NW 394 (1903), however, the Court considered an action for partition of a spousal homestead. In *Wells*, a husband and wife established a homestead on a quarter section of land. *Id.* at 394. When the wife died, the husband and two children received equal interests in the property, but only the husband continued to reside on the land. *Id.* He then sought

to partition the property, but the Court refused.  *Id.* at 395.  The Court noted that the relevant statute provided:

> Upon the death of either husband or wife the survivor may continue to possess and occupy *the whole homestead* until it is otherwise disposed of according to law; and upon the death of both husband and wife the children may continue to possess and occupy the whole homestead until the youngest child becomes of age.

*Id.* (emphasis added).  Because the statute granted a surviving spouse a homestead interest in the *entire* homestead, the Court reasoned that "during the lifetime of the surviving husband, wife, or any minor child, the homestead cannot be partitioned among the heirs at law, except by consent of all the parties interested in the same." *Id.*  According to the Court,

> "If the heirs are not entitled to a partition of the homestead during the lifetime of the surviving husband or wife or minor children who actually occupy the same as a homestead, it would seem to necessarily follow that such survivor would not be entitled to a partition of the same so long as he or she occupied the same as a homestead."

*Id.*

[¶14.]     Subsequent to *Wells*, the case of *Johnson v. Hendrickson* considered an action for partition among cotenants, one of which held a homestead interest in the subject property.  71 SD 394, 24 NW2d 914 (1946).  In that case, the defendant cotenant did not assert his homestead interest to completely avoid partition; rather, he argued that his homestead interest required partition-in-kind, rather than partition by sale.  *Id.* at 401, 24 NW2d at 918.  When considering that argument, we stated:

The rule as stated in *Thorn v. Thorn*, 14 Iowa 49, [1862 WL 264 (1862)], and approved in *Smith v. Wright*, 195 Minn 589, 263 NW 903 [(1935)], is that:

> The homestead right is derived alone from the statute, but cannot be claimed and enforced by one tenant in common to the detriment of his co-tenants. Hence if he should happen to have erected and occupied a homestead on a piece of land which could not be partitioned without great prejudice to his co-tenants, it would have to be sold, but in that event the court would see that the value of the homestead and improvements, distinct from the land, would be secured to the party at whose expense and labor they had been made.

*Johnson*, 71 SD at 401, 24 NW2d at 918. In light of that statement, the Court determined that partition by sale was appropriate. *Id.*

[¶15.] *Wells* and *Johnson* lead us to conclude that partition is not precluded here. *Wells* does not preclude partition in this case because it involved a *spousal* homestead created by statute. Ethel is not a widowed spouse, and Dennis does not seek partition based on his status as an heir. Further, *Johnson* suggests that Ethel's homestead interest must give way to the right of partition. Courts of other jurisdictions recognize the same principle. *See, e.g.*, Squibb v. Squibb, 190 Cal App 2d 766, 12 Cal Rptr 346 (CalCtApp 1961) ("The law is now clear that a statutory homestead interest does not deprive the co-tenant of the right to have the common property partitioned and sold and that the homestead right of the co-tenant in his interest in the common property is no bar to a suit for that purpose."); *Thorn*, 14 Iowa 49, 1862 WL 264 at 4 ("The homestead right is derived alone from the statute, but cannot be claimed and enforced by one tenant in common to the detriment of his co-tenants."); Banner v. Welch, 115 Kan 868, 225 P 98, 100 (1924) ("The rule is well

settled that, when two or more parties buy real property, and become owners thereof as tenants in common, one of them cannot, as against his cotenant, establish a homestead upon the whole."); Solomon v. Solomon, 187 Miss 22, 192 So 10 (1939) ("occupation of the property . . . as a homestead did not enlarge [an] interest therein against . . . cotenants, and it was at all times . . . subject to partition at the suit of [the] cotenants"); Sayers v. Pyland, 139 Tex 57, 161 SW2d 769 (1942) ("[W]hile one tenant in common may acquire homestead rights in the common property, the rights so acquired are not superior to the rights and remedies of the other joint owners."); *see also* Annotation, Homestead right of cotenant as affecting partition, 140 ALR 1170 ("The cases uniformly hold or assume . . . that the homestead rights of a cotenant, or of his spouse or family, in respect of his interest in the common property are not a bar to partition."). Decisions to the contrary, like *Wells*, rely on specific statutory or constitutional provisions which prohibit the partition of a homestead under certain factual circumstances. *See, e.g.*, Henderson v. Henderson, 212 Ark 31, 204 SW2d 911 (1947) (constitutional provision prevented partition of widow's homestead).

[¶16.] It stands to reason that Ethel's homestead interest can only attach to the property interest which she holds—that is, her undivided one-half interest in the home. *Cf.* Chambliss v. Derrick, 216 Ala 49, 112 So 330, 332 (1927) (stating that a widow's homestead interest "attached only to such right and title as was owned by her husband at the time of his death"); *Squibb*, 190 CalApp2d at 769, 12 CalRptr 346 ("The homestead claimant acquires only such rights of occupancy as he had before the creation of the homestead"); *Banner*, 115 Kan 868, 225 P at 100 ("All

[a cotenant] can do is to establish a homestead as to creditors upon his separable interest or title."); *Solomon*, 187 Miss 22, 192 So at 10 (noting that the cotenant's homestead interest only applied to the interest owned—in that case, a three-fifths undivided interest in the property); *Sayers*, 139 Tex at 64, 161 SW2d at 773 ("It is also a well-recognized principle of law that one's homestead right in property can never rise any higher than the right, title, or interest he owns in the property attempted to be impressed with a homestead right."). The occupation of the property by a cotenant as a homestead does not and cannot enlarge his interest as against his cotenants. *Id.*

[¶17.] Additionally, we have stated that the homestead interest is a privilege established by statute. *Estate of Mathison*, 468 NW2d at 403; *see also* 40 AmJur2d Homesteads § 2 ("Homestead rights did not exist under the common law. They are, it seems, peculiar to America, and exist by virtue of statute or constitutional provision."). While the right of partition is also established by statute, SDCL 21-45-1, it is designated a *right*, as opposed to a *privilege*. *See* Braaten v. Braaten, 278 NW2d 448, 450-51 (SD 1979) (noting that "a partition proceeding is *a matter of right* as an incident of common ownership," but recognizing that the right of partition is subject to "the inherent jurisdiction [of the court] to adjust all the equities in respect to the property" and also "may be modified, limited, or waived by agreement of the cotentants"). As the Alabama Supreme Court explained,

> Partition of lands held by tenants in common is a matter of right, regardless of the inconvenience resulting to joint owners. . . . In other words, the right of partition [in kind or in sale] is of right. *Joint ownership is not compulsory.*

*Chambliss*, 216 Ala 49, 112 So at 332 (emphasis added).

[¶18.]    Ethel argues that this case is distinguishable from cases which state that the homestead interest of a cotenant in common property is no bar to another cotenant's suit for partition.  According to Ethel, those cases considered a homestead right arising *after* the parties became cotenants.  Because Ethel's homestead interest arose *prior* to the creation of her cotenancy with Dennis, she asks us to find that the general rule does not apply here.  In support of this argument, Ethel cites the decision of the Texas Supreme Court in *Sayers v. Pyland*, 139 Tex at 57, 161 SW2d at 769.  In her brief to this Court, Ethel argues that *Sayers* makes clear that the general rule—that a cotenant cannot assert homestead rights over another cotenant's right of partition—"applies only when the parties acquire ownership of the subject property as cotenants and one of them *subsequently* attempts to impress the property with a homestead."  (Emphasis in original).  A close reading of *Sayers*, however, reveals that it considered only the general rule, not an exception for previously established homestead rights.

[¶19.]    In *Sayers*, Pyland conveyed a one-half undivided interest in property to Williams.  *Id.* at 59, 161 SW2d at 770.  At the same time, however, the interest which Pyland retained became subject to a lien and a note held by Sayers.  *Id.* When Sayers sued to recover on the note and foreclose on the entire property because of the lien, Pyland asserted his homestead interest in the entire property as a defense.  *Id.* at 60, 161 SW2d at 770-71.  Pyland argued that prior to Williams becoming a joint owner, Pyland held a homestead interest in the entire parcel.  *Id.* at 65, 161 SW2d at 773.  The court found, however, that Pyland voluntarily subordinated his right by the conveyance.  *Id.*  The *Sayers* court reasoned:

It is true that in this instance Pyland's homestead right had attached to the property prior to the time Williams became a joint owner therein; but the record discloses that after they had acquired their homestead right therein, Pyland and wife, in the matter provided by law for the sale of a homestead, conveyed to Williams an undivided one-half interest in the property, and thereby voluntarily subordinated their homestead right to all the rights and obligations appertaining to the relation of tenants in common. Consequently they thereafter stood in the same position as if their homestead right in the property had been acquired after the parties had become tenants in common in the property.

*Id.* Under that reasoning, the court found that Pyland's homestead interest arose *after* the lien attached to his interest in property, and therefore the one-half undivided interest in the property was subject to the lien. *Id.*

[¶20.]     Ethel argues that the above quoted language of *Sayers* indicates that the time a homestead interest is established determines whether it is subject to the rights of a joint tenancy. Ethel's argument, however, is misplaced. First, the court in *Sayers* found that the original homestead interest was lost. Therefore, it did not consider a homestead interest established prior to a cotenancy, and any language which suggests that such a right deserves greater deference is dicta. Second, *Sayers* did not consider the partition rights of a cotenant; it considered the rights of a creditor. Thus, it cannot be interpreted as establishing a distinction between homestead interests that arise prior to and after the creation of a joint tenancy.[5]

_____

5.     In her reply brief, Ethel also criticizes the footnote in the trial court's memorandum opinion which noted "[o]ther state cases precluding the claim of a homestead exemption against a tenant in common include: *First Huntsville Properties Co. v. Laster*, 797 SW2d 151, 153 (TexCtApp 1990) [(*Laster I*)] ('The homestead right of one cotenant may not prejudice the rights of other cotenants['}) . . . ." Ethel correctly points out that the *Laster I* decision was appealed to the Texas Supreme Court, which criticized the court of appeals'
(continued . . .)

[¶21.]     Our only decision in this area, *Johnson*, indicates that a homestead interest must give way to a cotenant's right of partition. We are not aware of and Ethel has not presented any case which parts with that general rule simply because the homestead interest arose before the cotenancy was established.[6] Courts have widely recognized the general rule that homestead interests exist subject to the rights of a cotenant and that the homestead interests exists only to the extent of an owner's interest. Further, our prior cases establish that homestead is a privilege, not a right, under South Dakota law. In light of these well established principles, the paucity of authority for the distinction, and the facts of this case, we decline to hold that the rights of a cotenancy are subject to previously established homestead interests.

---

(. . . continued)

> reliance on *Sayers*. *See* Laster v. First Huntsville Props. Co., 826 SW2d 125, 131 n3 (Tex 1992) (*Laster II*). The court's statement in *Laster II*, however, actually militates against relying on *Sayers* in this case. It stated:

>> It is not necessarily to address the question of which right in the residence, as between [ex-wife]'s homestead interest and [ex-husband's creditor]'s right of partition, is paramount. The court of appeals misconstrued *Sayers v. Pyland* when it determined that the *Sayers* court stated that a cotenant's right to partition was paramount to another cotenant's homestead right because that case rested its holding *on the fact that the homestead right had been voluntarily subordinated to another cotenant's rights.*

> *Id.* (emphasis added). Further, any reliance on Texas cases is questionable because, "[i]n Texas, the homestead right constitutes an estate in land." *Id.* at 129.

6.     We note that Ethel's homestead interest arose *after* she and Francis acquired joint interests in the property. Although the nature of the interest is different, Dennis derived his interest from Francis. The parties did not argue those facts, however, and we need not decide their significance.

[¶22.] We conclude that Ethel's homestead interest is subject to Dennis' right of partition. While the result of this case may seem harsh, the equities of the situation are not without importance. We have recognized that the right of partition is subject to a balancing of the equities. *Braaten*, 278 NW2d at 450-51. Similarly, the Alabama Supreme Court recognized the significance of a court's equitable powers in the context of a widow who held a homestead interest after the death of her husband:

> The homestead right of the widow is, however, a favored one, and, in making partition or sale for division at the instance of tenants in common of her deceased husband, her homestead will, in equity, be preserved to her intact, the home itself rather than money in lieu of it, if this can be done without sacrifice to the rights of such tenants in common to have partition of the property.
>
> If, as here, the widow's homestead covers an undivided half interest in the property, and it is capable of equitable division into two equal parts, this will be done, and the court then proceed to sell for division the portion allotted to complainants and their fellow tenants entitled to share in the portion allotted to them on such division.

*Chambliss*, 216 Ala 49, 112 So at 332. We are persuaded that such equitable consideration of a homestead interest is appropriate in an action for partition. Therefore, while a homestead interest will not prevent partition, it is certainly relevant to the determination of the appropriate partition.

[¶23.] Therefore, we find that a cotenant's homestead interest exists subject to the right of partition which inures to a cotenancy. As stated by the Minnesota Supreme Court, the opposite conclusion "would at times result in great injustice; whereas the law, as we view it, permits the rights of all parties to be protected."

*Smith*, 195 Minn at 593, 263 NW at 905. The trial court did not err when it ordered partition of the property.

[¶24.]     Affirmed.

[¶25.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.