#29929-aff in pt & vacate-MES
**2023 S.D. 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

SD CITIZENS FOR LIBERTY, INC.,
TONI E. WEAVER, MARCY M.
MORRISON, BRIAN T. LARSON, and
SAMANTHA C. MCCULLY,                    Plaintiffs and Appellants,

v.

RAPID CITY AREA SCHOOL
DISTRICT 51-4,                          Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CRAIG A. PFEIFLE
Judge

\* \* \* \*

KENNETH E. JASPER
Rapid City, South Dakota                Attorney for plaintiffs
                                        and appellants.


EMILY M. SMORAGIEWICZ
KELSEY B. PARKER of
Bangs, McCullen, Butler,
   Foye & Simmons, LLP
Rapid City, South Dakota                Attorneys for defendant
                                        and appellee.

\* \* \* \*

ARGUED
NOVEMBER 8, 2022
SUPPLEMENTAL BRIEFS
RECEIVED
SEPTEMBER 11, 2023
OPINION FILED **11/01/23**

#29929

SALTER, Justice

[¶1.] An organized citizens group, along with several individuals, commenced an action against Rapid City Area School District 51-4 (RCAS) seeking a declaration that RCAS was acting contrary to South Dakota's open meeting law by not allowing public comment at some of its board meetings. After a hearing on the parties' cross-motions for summary judgment, the circuit court ruled in favor of RCAS and denied the group's summary judgment motion. The court also determined that it could not review a determination made by a state's attorney concerning an alleged violation of a separate open meeting statute. We vacate the portion of the court's decision concerning public comment and affirm the court's decision to not review the state's attorney's determination.

## Factual and Procedural History

[¶2.] RCAS is organized as a school corporation under SDCL chapter 13-5 and is governed by the Rapid City Area School Board of Education (the Board). *See* SDCL 13-5-1 (defining school districts); SDCL 13-8-1 (defining school board). In addition to broad statutory authority to operate and administer the schools in their districts, *see* SDCL 13-8-39, school boards provide "educational opportunities and services for all citizens residing within the school district," SDCL 13-8-1. The Board serves about 13,000 students and employs around 1,800 community members.

[¶3.] The Board has identified three types of meetings through which it exercises governance—annual meetings, regular meetings, and special meetings. The first among them—annual meetings—are mandated for all school boards by SDCL 13-8-10. The statute requires school boards to consider several broad types of

-1-

administrative matters at its annual meeting, such as electing officers, selecting depository institutions and account custodians, and designating a legal newspaper. SDCL 13-8-10.

[¶4.] School boards may also use the annual meeting to designate the time for their regular meetings which otherwise must be held "on the second Monday of each month." SDCL 13-8-10. For RCAS, the Board usually schedules two regular meetings each month on the second and fourth Mondays.[1] According to RCAS, the Board conducts its official business at these regular meetings.

[¶5.] The Board also holds special meetings with recurring frequency. Special meetings are not required for school boards, but they "may be held upon call of the president or in the president's absence by the vice-president, or a majority of the board members." *Id.* The Board generally convenes monthly special meetings that are self-styled as study sessions and Board retreats.[2]

[¶6.] As the name suggests, the study sessions allow the Board to study and discuss topics before taking official action on them at a regular meeting. The Board cited, as an example, a particular study session which covered the "10-point grading scale, Title VI – Office of Indian Education, RCAS Consulting Agreement with [American Gulf International], and the RCAS Academies and Pathways."

---

1. Between 2015 and 2020, the regular meetings were held on the second and fourth Mondays of every month. At some point in 2021, the Board started holding regular meetings on the second and fourth Tuesdays of every month.

2. On occasion, the Board has used additional names to refer to special meetings, such as hybrid meetings or special study sessions.

[¶7.]     In a similar way, RCAS explains that the Board retreats give members the "opportunity . . . to meet and discuss the Board's current and future work at the District – including planning what matters will be coming before the Board at regular meetings, what presentations are necessary for the Board's consideration and the public's interest, and to communicate with District Administration about updates, questions, and concerns." At times, the Board holds retreats outside RCAS's boundaries, including locations in Custer State Park and in Deadwood.

[¶8.]     School districts, like RCAS, are considered political subdivisions and public bodies under SDCL 1-25-12(1) to (2), making them subject to SDCL 1-25-1, commonly known as South Dakota's open meeting law. The statute provides that "[t]he official meetings of the state and its political subdivisions are open to the public unless a specific law is cited by the state or the political subdivision to close the official meeting to the public." SDCL 1-25-1. An official meeting, in turn, is any meeting at which a quorum of the public body is present and where "official business or public policy of that public body is discussed or decided[.]" SDCL 1-25-12(3).

[¶9.]     This appeal was originally presented as a controversy involving the interpretation of the then-existing version of SDCL 1-25-1 (2019) that related to public comment at official meetings:

> The public body shall reserve at every *regularly scheduled official meeting* a period for public comment, limited at the body's discretion, but not so limited as to provide for no public comment. At a minimum, public comment shall be allowed at *regularly scheduled official meetings* which are designated as regular meetings by statute, rule, or ordinance.

(Emphasis added.)

[¶10.]     Along with provisions of state law, the Board is governed by its own district policies, one of which is entitled Public Participation at Board Meetings, and states:

> All regular and special meetings of the [B]oard will be open to the public.  At meetings a specific time period will be designated as "Open Forum."  A time limit may be set both for individual speakers and for the length of the Open Forum time period. . . . Public comments and questions at Open Forum may deal with any topic related to public education.  Public comments on agenda items will be encouraged by the [B]oard president. Comments at special meetings must be related to the subject of the meeting.

[¶11.]     The Board reserves what the parties refer to as an "open forum" period for public comment at its regular meetings held twice each month.  But the Board has not always done so for its special meetings.

[¶12.]     From July 2018 through April 2020, the Board included an open forum period at all special meetings designated as study sessions, though it did not allow open forum at special meetings designated as retreats.  However, on April 13, 2020, the Board did not allow for an open forum period at a special meeting study session. This practice became more frequent with the election of a new Board president, and between July 27, 2020, and June 28, 2021, public comment was not permitted at twenty-two out of twenty-four special meetings.

[¶13.]     This action arose as an effort to use the declaratory judgment remedy to determine whether RCAS has a statutory obligation to afford an opportunity for public comment at its special meetings.  The plaintiffs are SD Citizens for Liberty

(CLF), Inc., Tonchi Weaver, Samantha C. McCully, Marcy M. Morrison, and Brian T. Larson (collectively, Citizens).[3]

[¶14.] In a separate, but somewhat related, development, Weaver alleged a criminal open meeting law violation against the Board in November 2020. According to Weaver, the Board had convened in executive session during a November 12, 2020 study-session special meeting to screen eleven applicants for a vacant Board seat.[4] Weaver alleged the Board had taken official action by selecting the new member during its executive session without reconvening and acting to appoint the new member during an open meeting. As evidence, Weaver pointed to letters—issued by the Board after the executive session but before official action at an open meeting—advising unsuccessful applicants that another person had been appointed.

[¶15.] Pennington County State's Attorney Mark Vargo investigated Weaver's allegations but did not find evidence of a statutory violation. In a February 2021 letter to Weaver, Vargo stated that any vote taken on November 12

---

3. In their amended complaint, the plaintiffs each identify an interest in the public comment issue. For example, CFL is described as a non-profit corporation with a particular interest in "providing public comment at open official meetings of governmental bodies and political subdivisions[.]" Weaver is CFL's lobbyist and a grandmother of RCAS students. McCully, Morrison, and Larson are all parents of RCAS students.

4. Executive or closed meetings are authorized for a number of reasons specifically enumerated in SDCL 1-25-2(1), including "[d]iscussing the qualifications, competence, performance, character or fitness of any public officer or employee or prospective public officer or employee." The statute also requires that "any official action concerning the matters [addressed in executive session] shall be made at an open official meeting" and makes a violation a Class 2 misdemeanor. SDCL 1-25-2.

was a "'straw poll' or informal vote" and that the vacant Board seat was filled through a vote that occurred during an open meeting on November 16. Additionally, Vargo determined that sending letters to the other applicants was a "courtesy" not an "official action" because, at that point, the "ultimate vote had not occurred, and the outcome could still change." Until the initiation of this suit, more than four months later, Weaver pursued no further action on the matter.

[¶16.] The question of whether public comment was permitted at special meetings lingered and was a source of discussion at Board meetings in the following months. During a June 2, 2021 study session, a Board member successfully sought, over opposition, to add a period of public comment to the agenda, arguing there was no real distinction between regular and special meetings, given the frequency of the latter.

[¶17.] Several weeks later, Citizens commenced this action against RCAS, requesting one principal type of declaratory relief: a declaration regarding the correct interpretation of the term "regularly scheduled official meeting," which, at the time, triggered SDCL 1-25-1's public comment requirement. In Citizens' view, the term described any official meeting for which notice was provided under SDCL 1-25-1.1, no matter how the meeting is denominated by the Board.

[¶18.] In its answer, RCAS denied that SDCL 1-25-1 required the Board to allow public comment at its special meetings. In so doing, RCAS equated the term "regularly scheduled official meeting"—for which SDCL 1-25-1 required public comment—with the term "regular meeting" used in the annual meeting statute for school boards. *See* SDCL 13-8-10. Based upon this fusion of statutory terms, RCAS

claimed that the Board's special meetings, under any name, were not only mutually exclusive with regular meetings, but they also could not be considered regularly scheduled official meetings.

[¶19.] The parties filed cross-motions for summary judgment. In its brief to the circuit court, Citizens claimed that the term—regularly scheduled official meeting—as used in SDCL 1-25-1 was ambiguous. Nevertheless, Citizens argued, by considering the statute's legislative history, the court could discern that public participation was required at *all* official meetings scheduled in a regular manner, which it asserted included any meeting that was properly noticed under the provisions of SDCL 1-25-1.1 and at which a quorum was present.

[¶20.] Citizens also cited RCAS's district policy requiring an "Open Forum" at "[a]ll regular and special meetings" as part of an effort to strengthen its SDCL 1-25-1 argument. Citizens' amended complaint did not allege a separate basis for declaratory relief based on the district policy, and Citizens' summary judgment brief simply stated it "was asking this court to require [the Board] to follow their own policies and comply with the spirit and intent of Chapter 1-25[.]"

[¶21.] Also not mentioned in Citizens' amended complaint was Weaver's open meeting violation claim. However, in its summary judgment brief, Citizens asked the court to require the Board "to also follow [SDCL] 1-25-2[,]" disputing Vargo's no-violation finding.

[¶22.] In contrast, RCAS offered the view that "regularly scheduled official meeting" as used in SDCL 1-25-1 was plain and unambiguous. In RCAS's opinion, the phrase was identical to SDCL 13-8-10's "regular meeting" term and meant the

Legislature did not intend to require school boards to allow public comment at special meetings. RCAS acknowledged that Citizens' argument would be meritorious under the previous version of SDCL 1-25-1, which required public comment at all "official meetings," but claimed Citizens could not prevail under the current version of the statute.

[¶23.] As to Citizens' suggestion that RCAS is violating its own district policy by not allowing an open forum period at regular and special meetings, RCAS responded in two ways. First, it cited the provision of its district policy that allowed the Board to regulate the length of time allotted for open forum, arguing the Board could permissibly limit the open forum time "so as not to allow Open Forum at all[.]" Second, RCAS claimed Citizens' only option was to pursue an administrative remedy by filing a complaint with RCAS alleging it was violating its own policies and then appealing any adverse decision to circuit court. *See* SDCL 13-46-1 (authorizing an aggrieved party to appeal a decision by a school board to circuit court).[5]

[¶24.] In an oral ruling, the circuit court accepted RCAS's interpretation of SDCL 1-25-1 and granted its motion for summary judgment while simultaneously denying Citizens' corresponding motion. The court offered its view that the "statute was unambiguous," though it is unclear whether the court was referring to SDCL 13-8-10 exclusively or SDCL 1-25-1 as well:

> I think SDCL 13-8-10 allows the Board to set those regularly scheduled official meetings; that those regularly scheduled official meetings are those at which public comment is required. The Rapid City Area School District offers public comment at

---

5. RCAS also suggested that Citizens were not aggrieved parties.

those regularly scheduled official meetings. And other meetings, while they may be official and require the ability for the public to have that meeting available to them for purposes of review, are not meetings at which the Board is required to offer public comment based upon my reading of the statutes.

[¶25.] The circuit court also ruled on two other, more peripheral issues. Referring to the "specter" of an open meeting violation, the court stated it did not view "the Declaratory Judgment statutes [as] the appropriate remedy for . . . allegations . . . concerning open meetings." The court noted the statutory procedure for pursuing an open meeting violation allegation contemplates a role for state's attorneys and for the South Dakota Open Meetings Commission, but not the court. *See* SDCL 1-25-6 to -7 (establishing the procedure for determining allegations of open meeting law violations).

[¶26.] In addition, the circuit court rejected RCAS's argument that Citizens could not obtain an interpretation of SDCL 1-25-1 as a request for declaratory relief but, instead, was relegated to an administrative complaint to the Board and, ultimately, an appeal under SDCL 13-46-1. The court noted that RCAS's argument had "some allure to it," but the procedure outlined by RCAS "doesn't preclude the plaintiffs . . . from requesting a Declaratory Judgment as to the meaning of statutes[.]"

[¶27.] Citizens appealed and have argued that the circuit court erred when it determined that a "regularly scheduled official meeting" under SDCL 1-25-1 is unambiguously identical to a "regular meeting" for a school board under SDCL 13-8-10. Citizens also claim that the circuit court erred when it denied their request

for a declaration that the Board violated the open meeting provisions of SDCL 1-25-2.[6] The parties submitted appellate briefs and later presented oral argument.

[¶28.]     After this appeal was initially submitted, we learned through our own research that SDCL 1-25-1 had been amended by the 2023 Legislature in a way that directly implicated the principal issue presented. As the following excerpt illustrates, the 2023 amendments eliminated the "regularly scheduled official meeting" phrase which is at the heart of this case in favor of the statutorily defined term, "official meeting:"

> The public body shall reserve at every ~~regularly scheduled~~ official meeting a period for public comment, limited at the public body's discretion <u>as to the time allowed for each topic and the total time allowed for public comment</u>, but not so limited as to provide for no public comment. ~~At a minimum, public comment shall be allowed at regularly scheduled official meetings which are designated as regular meetings by statute, rule, or ordinance.~~

2023 S.D. Sess. Laws ch. 5 (SB 162) (additions underlined, deletions in strike through).

[¶29.]     These amendments took effect on July 1, 2023. And in view of their apparent impact upon the SDCL 1-25-1 statutory interpretation issue, we ordered the parties to submit simultaneous supplemental briefs addressing whether the

---

6.     Citizens also claim that the circuit court erred by not providing a separate ruling on the interpretation and application of RCAS's policies. However, the issue is not properly before us because it was not presented to the circuit court or pled in Citizens' amended complaint. Citizens' issue regarding the alleged SDCL 1-25-2 open meeting violation was also not pled, but the circuit court perceived the "specter" of the allegation and ruled on the merits of the claim, allowing us to conduct meaningful review of the court's decision.

declaratory relief sought relating to SDCL 1-25-1, as it existed prior to July 1, 2023, had become moot.

[¶30.] For its part, the Board acknowledges that the SDCL 1-25-1 issue "has become moot because of the legislative amendment to the statute." The Board asserts that we should now dismiss the appeal, which we interpret to mean partially dismiss the appeal because the statute giving rise to Citizens' open meeting violation issue was not amended during the Legislature's 2023 session.

[¶31.] In their combined response, Citizens argue that the 2023 amendments did not render the SDCL 1-25-1 controversy moot. Although the Legislature had eliminated the phrase "regularly scheduled official meeting," Citizens claim the word "regular" appears in other statutes relating to school board meetings and contend that we should divert from the SDCL 1-25-1 issue presented and interpret the text of these other statutes.

[¶32.] Alternatively, Citizens argue that the issue is subject to two exceptions to the mootness doctrine. They claim the statutory interpretation issue is capable of repetition yet evading review because the Legislature could amend SDCL 1-25-1 in a different way in its upcoming 2024 session. Citizens also claim we could review the otherwise moot issue as a matter of general public importance.

## Analysis and Decision

### *Mootness Prior to a Judicial Decision*

[¶33.] An appeal submitted for decision but not yet decided becomes moot when "there has been a change of circumstances or the occurrence of an event by which the actual controversy ceases and it becomes impossible for the appellate

court to grant effectual relief." *State v. Humpal*, 2017 S.D. 82, ¶ 9, 905 N.W.2d 117, 120 (quoting *Rapid City J. v. Seventh Jud. Cir. Ct.*, 283 N.W.2d 563, 565 (S.D. 1979)). A live controversy is a component of justiciability, constraining courts from offering solutions which are in search of problems. *See Metro. Life Ins. Co. v. Kinsman*, 2008 S.D. 24, ¶ 10, 747 N.W.2d 653, 658 ("We do not answer hypothetical questions or dispense advisory opinions." (citation omitted)).

[¶34.] A controversy that depends upon the application of a statute can become moot through intervening amendments that change the nature of the controversy from actual to academic. For instance, in *Phelps-Roper v. Koster*, the Eighth Circuit Court of Appeals determined a plaintiff's due process challenge to a Missouri statutory restriction upon demonstrations at funerals became moot when the state legislature repealed the law. 815 F.3d 393, 397–98 (8th Cir. 2016).

[¶35.] We cited *Phelps-Roper* with approval in *Skjonsberg v. Menard, Inc.*, and adopted its view that the proper disposition for a case which becomes moot on appeal is to vacate the trial court's ruling and "remand with instructions to dismiss." 2019 S.D. 6, ¶ 10, 922 N.W.2d 784, 788. The vacatur rule is an equitable one that traces its origin to the United States Supreme Court's decision in *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S. Ct. 104, 95 L. Ed. 36 (1950):

> The point of vacatur is to prevent an unreviewable decision from spawning any legal consequences, so that no party is harmed by what we have called a "preliminary" adjudication. . . . When happenstance prevents that review from occurring, the normal rule should apply: Vacatur then rightly strips the decision below of its binding effect and clears the path for future relitigation[.]

*Camreta v. Greene*, 563 U.S. 692, 712–13, 131 S. Ct. 2020, 2035, 179 L. Ed. 2d 1118 (2011) (cleaned up) (discussing *Munsingwear*).

[¶36.] Here, the 2023 amendments rendered the SDCL 1-25-1 issue moot. By removing the "regularly scheduled" text from the statute in 2023, the Legislature essentially returned the statute to its 2018 version by requiring public comment at all official meetings, which, parenthetically, essentially codified Citizens' argument in this appeal.[7] There is no longer a need to review the phrase "regularly scheduled official meeting," and a decision interpreting the pre-2023 version of SDCL 1-25-1 will not provide effective relief because we would not declare the parties' current "rights, status, or other legal relations . . . affected by a statute[.]" SDCL 21-24-3.

[¶37.] Citizens' argument that the case is not moot because the term "regular" appears in other statutes—not SDCL 1-25-1—implicates the sort of hypothetical or advisory opinions our cases counsel against. Accepting Citizens' invitation to interpret a different term in different statutes qualitatively changes the principal issue presented in this appeal.

[¶38.] The meaning of a regular meeting, at least in the context of the Board's regular meetings, was only significant to the interpretation of SDCL 1-25-1 because the circuit court declared that a regular meeting was the same as a "regularly scheduled official meeting." But whether the use of the adjective "regular" in SDCL

---

7. The Legislature's 2019 amendment which added "regularly scheduled" to the existing term "official meeting" was described during a hearing before the Senate State Affairs Committee as a non-substantive change—a clarifying bill "that doesn't do anything." Senate State of Affairs Committee Hearing on S. 91, 2019 Leg., 94th Reg. Sess. 4–5, 10.

13-8-10 meant the same thing as the adjective "regularly" in SDCL 1-25-1 is an unnecessary inquiry at this point.[8]

[¶39.] Nor is there sufficient justification to apply either of the two exceptions to the mootness doctrine, as Citizens suggest—the capable-of-repetition-yet-evading-review and general-public-interest exceptions. As to both, Citizens acknowledge it is within our discretion to review a moot issue, or not, and offer a restated version of the principal argument against mootness—i.e., the "need" to interpret "regular" in other statutes. Beyond this, Citizens argue that the Legislature might again act to change SDCL 1-25-1 in its upcoming session. But it seems highly speculative to hazard a guess as to whether the statute would be amended at all and, if it was, what the amended language would be.

[¶40.] Under the circumstances, we conclude that there is no longer a live controversy relating to the parties' differing interpretations of SDCL 1-25-1 given the Legislature's 2023 amendments. There is, therefore, no need to address the merits of the circuit court's decision, which is accordingly vacated.

***Open Meeting Law Violation***

[¶41.] "We review a circuit court's entry of summary judgment under the de novo standard of review." *Healy Ranch P'ship v. Mines*, 2022 S.D. 44, ¶ 45, 978 N.W.2d 768, 780 (quoting *Lammers v. State ex rel. Dep't of Game, Fish & Parks*, 2019 S.D. 44, ¶ 9, 932 N.W.2d 129, 132). "We will affirm a circuit court's 'grant of a

---

8. Citizens also identify the use of "regular" (as in "regular meeting") in other statutes, like SDCL 1-25-1.1, SDCL 1-25-1.3, and SDCL 1-25-3, but these statutes relate to notice for a meeting, the agenda, and the minutes—not public comment.

motion for summary judgment when no genuine issues of material fact exist, and the legal questions have been correctly decided.'" *Ries v. JM Custom Homes, LLC*, 2022 S.D. 52, ¶ 14, 980 N.W.2d 217, 222 (quoting *Harvieux v. Progressive N. Ins. Co.*, 2018 S.D. 52, ¶ 9, 915 N.W.2d 697, 700). Issues of statutory interpretation present particular questions of law which we also review de novo. *Thom v. Barnett*, 2021 S.D. 65, ¶ 13, 967 N.W.2d 261, 267 (citing *Jans v. S.D. Dep't of Pub. Safety*, 2021 S.D. 51, ¶ 10, 964 N.W.2d 749, 753).

[¶42.] As part of their motion for summary judgment, Citizens also sought a declaration that RCAS violated SDCL 1-25-2 under the theory that the Board took official action during an executive session by filling a board vacancy and sending letters to the ten unsuccessful applicants. The circuit court denied Citizens' request to declare an open meeting violation stating, "I don't think that the Declaratory Judgment statutes are the appropriate remedy for purposes of allegations of directions concerning open meetings." The circuit court further concluded that "[t]he statutory procedure is clear[.]" A complaint "needs to proceed through the office of the State's Attorney and then through the South Dakota Opening Meetings Commission." We agree with the circuit court.

[¶43.] "An appeal from the action of public officers or boards to the circuit court must be invoked in the manner prescribed by statute." *Middle Creek Sch. Dist. v. Butte Cnty. Bd. of Educ.*, 83 S.D. 107, 111, 155 N.W.2d 450, 452 (1968) (citation omitted). SDCL chapter 1-25, as presently written, does not provide a route for judicial review of a state's attorney's determination that a complaint has no merit.

> If a complaint alleging a violation of this chapter is made pursuant to § 23A-2-1, the state's attorney shall take one of the following actions:
>> (1) Prosecute the case pursuant to Title 23A;
>> (2) Determine that there is no merit to prosecuting the case. Upon doing so, the state's attorney shall send a copy of the complaint and any investigation file to the attorney general. The attorney general shall use the information for statistical purposes and may publish abstracts of such information, including the name of the government body involved for purposes of public education; or
>> (3) Send the complaint and any investigation file to the South Dakota Open Meetings Commission for further action.

SDCL 1-25-6.

[¶44.] Because the statute does not prescribe a manner through which a complainant may seek review of the state's attorney's decision, the circuit court was without jurisdiction to enter judgment declaring an open meeting violation. Consequently, this Court also lacks jurisdiction to grant Citizens' requested relief. *See Middle Creek Sch. Dist.*, 83 S.D. at 111, 155 N.W.2d at 452 ("If a circuit court is without jurisdiction of the subject matter in litigation, this [C]ourt does not acquire jurisdiction thereof by appeal to it from the final order or judgment of the circuit court."). Notwithstanding the circuit court's lack of jurisdiction, this Court acquires jurisdiction sufficient to determine the "lack of jurisdiction below." *Beadle Cnty. v. Bd. of Cnty. Comm'rs*, 62 S.D. 86, 88, 251 N.W. 816, 817 (1933).

## Conclusion

[¶45.] We hold that the issue regarding the interpretation of "regularly scheduled official meeting" as used in SDCL 1-25-1 is moot and, therefore, nonjusticiable. Accordingly, we vacate the circuit court's decision interpreting the statute. We also determine that SDCL chapter 1-25 does not confer jurisdiction

#29929

upon circuit courts to review the actions of a state's attorney taken under SDCL 1-25-6. Thus, we affirm the circuit court's decision to not review the State's Attorney's determination.

[¶46.]     JENSEN, Chief Justice, and DEVANEY and MYREN, Justices, and WILBUR, Retired Justice, concur.

[¶47.]     WILBUR, Retired Justice, sitting for KERN, Justice, who deemed herself disqualified and did not participate.